L. Verdelle **CLARK**, Plaintiff-Appellant,

v.

Leslie **HOLMES** et al., Defendants-Appellees.

No. 71–1709.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 11, 1972.

Decided Dec. 12, 1972.

Certiorari Denied May 7, 1973.

See 93 S.Ct. 2148.

Elmer Gertz, Wayne B. Giampietro, Chicago, Ill., for plaintiff-appellant.

Robert E. Cronin, John L. McCausland, Chicago, Ill., for defendants-appellees.

Before SWYGERT, Chief Judge, and PELL and STEVENS, Circuit Judges.

PER CURIAM.

In his amended three-count complaint based upon 42 U.S.C. §§ 1983 and 1985 (3), L. Verdelle Clark sought damages for the alleged violation of his civil rights by certain teachers and officials at Northern Illinois University (NIU),[1] a state institution of higher learning. A nontenured temporary substitute teacher at NIU from 1962 to 1964, Clark claimed, *inter alia*, that the defendants had made false charges against him, the result of which was that NIU decided not to rehire him. The defendants also allegedly denied him a hearing or investigation of these charges. Clark maintained that these actions stemmed from a conspiracy among the defendants, who allegedly wished to penalize him for exercises by him of his right to freedom of speech.

The trial, limited to the question of liability, was held before a jury. At the close of the plaintiff's case, the court granted a directed verdict for the defendants on the issue of conspiracy (Count II and part of Count I).[2] It also rejected plaintiff's proffered instructions on the First Amendment rights of public school teachers. The jury returned verdicts for each of the defendants. After the court denied his motion for judgment notwithstanding the verdicts or for a new trial, Clark brought this appeal.

In August 1962, Clark applied for and accepted a temporary position for the fall semester of 1962 as an associate profes-

---

1. The amended complaint named as defendants fourteen professors and administrators and ten former members of the Teachers College Board, which at the time the cause arose was the state board governing NIU. On defendants' motions, the ten Board members and all but six of the professors and administrators were dismissed from the case.

2. Prior to trial, on August 24, 1970, the district court granted summary judgment for the defendants named in Count III, which charged that Clark had been blacklisted so as to prevent him from securing future employment at other universities.

sor in NIU's Department of Biological Sciences. Clark was to substitute for the professor who usually taught a required introductory health survey course. The possibility of employment for the spring semester was left open. When the teacher for whom the plaintiff was substituting decided not to return for the spring session, Clark accepted an offer to teach that semester.

In a letter dated April 30, 1963, the head of the Department of Biological Sciences offered Clark a temporary position for the following academic year, 1963–64, as a replacement for another professor. The letter also warned Clark that his acceptance of the offer should be made with the understanding that he should remedy certain deficiences in his professional conduct: he counselled an excessive number of students instead of referring them to NIU's professional counsellors; he overemphasized sex in his health survey course; he counselled students with his office door closed; and he belittled other staff members in discussions with students.

Clark subsequently discussed these criticisms with the department head and with defendant Skok, then Dean of the College of Liberal Arts and Sciences. He defended his conduct, maintaining that it was proper for a teacher to hold himself out as a personal confidant of his students and denying that he was teaching too much sex education. He stated that he had surveyed his students' interests, had found that they wanted sex education and mental health emphasized and so had agreed to do so and only "touch on" the other topics covered by the assigned text and the course syllabus. Rejecting disapproval of his critical remarks as hypocritical, he declared that he would not stop discussing with students his complaints about the administration and other teachers and he would not confine his discussions to his office. Rather, he would "do it where I think it is effective, and if it costs me, so be it."

In May 1963, Clark formally accepted the temporary position for the 1963–64 academic year. On December 11, 1963, he received written notification that his temporary contract terminated June 8, 1964. In early February 1964, at a conference with the department head and two senior members of the department, Clark was told that he would not be scheduled for any classes for the spring semester, 1963–64. The three men pointed out to Clark that his position was a temporary one and repeated most of the criticisms outlined in the April 30th letter.

Although plaintiff's briefs and oral argument leave us somewhat uncertain as to his contentions on this appeal, it appears that he claims the trial court erred (1) in refusing to instruct the jury respecting First Amendment rights of public school teachers; (2) in excluding testimony of a faculty member about his efforts to secure Clark a hearing; (3) in instructing the jury that Clark's due process rights in connection with the expiration of his contract did not include the right to formal charges and hearing; and (4) in directing a verdict for the defendants on the conspiracy issue.

After lengthy discussion with counsel, the trial court declined to instruct the jury to the effect that a public school teacher has a First Amendment right to teach and say anything he wishes in classes and to students as long as he does not make statements knowing them to be false or with reckless disregard of their truth or falsity.

Both parties claim to find support in Pickering v. Board of Education, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968), a major pronouncement of the First Amendment rights of public school teachers. There, the Supreme Court reversed the dismissal of a teacher who had written a letter to a local newspaper in which he, as a citizen, criticized the Board of Education's allocation of school funds and its method of informing the district's taxpayers about the need for additional tax revenue. The Court ana-

lyzed the First Amendment problem as follows:

> "[I]t.cannot be gainsaid that the State has interests as an employer in regulating the speech of its employees that differ significantly from those it possesses in connection with regulation of the speech of the citizenry in general. *The problem in any case is to arrive at a balance* between the interests of *the teacher, as a citizen,* in commenting upon matters of *public concern* and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." 391 U.S. at 568, 88 S.Ct. at 1734. [Emphasis added.]

*Cf.* Mailloux v. Kiley, 448 F.2d 1242, 1243 (1st Cir. 1971).

 Clark's claim of error fails for two reasons. First, Clark construes too broadly the extent of his First Amendment rights and thus slights the interest of the State in providing its educational services according to policies it deems proper. Clark would have us drastically and radically curtail the scope of discretion which may be exercised by a state school in deciding whom it shall rehire. Second, Clark ignores the factual differences between his case and a case like *Pickering*. His disputes with his superiors and colleagues about course content and counselling were not "matters of public concern" and involved Clark as a teacher rather than as an interested citizen. *Compare also* Perry v. Sindermann, 408 U.S. 593, 595, 598, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972); Donahue v. Staunton, 471 F.2d 475 (7th Cir. 1972). Further, Clark has cited no sound authority for his proposition that he had a constitutional right to override the wishes and judgment of his superiors and fellow faculty members as to the proper content of the required health course and the inadvisability of engaging in extensive personal counselling of students, two of the three matters about which most of the defendants were particularly concerned.

 The same reasoning applies to Clark's criticisms of NIU's administration and faculty in front of students. We think the district court correctly decided that this conduct also was not protected by the First Amendment. *Pickering,* which guards a public school teacher's right to speak out publicly on issues of public concern, is factually distinguishable from the present case. However, we do recognize that, although academic freedom is not one of the enumerated rights of the First Amendment, Parducci v. Rutland, 316 F.Supp. 352, 355 (M.D.Ala.1970), it is now clear that academic freedom, the preservation of the classroom as a "market place of ideas," is one of the safeguarded rights. Healy v. James, 408 U.S. 169, 180–181, 92 S.Ct. 2338, 33 L.Ed.2d 266 (1972). But we do not conceive academic freedom to be a license for uncontrolled expression at variance with established curricular contents and internally destructive of the proper functioning of the institution. First Amendment rights must be applied in light of the special characteristics of the environment in the particular case. Tinker v. Des Moines Independent Community School District, 393 U.S. 503, 506, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969); *Healy, supra.* The plaintiff here irresponsibly made captious remarks to a captive audience, one, moreover, that was composed of students who were dependent on him for grades and recommendations. *See* Ferguson v. Thomas, 430 F.2d 852, 858 (5th Cir. 1970).

 Furthermore, *Pickering* suggests that certain legitimate interests of the State may limit a teacher's right to say what he pleases: for example, (1) the need to maintain discipline or harmony among co-workers; (2) the need for confidentiality; (3) the need to curtail conduct which impedes the teacher's proper and competent performance of his daily duties; and (4) the need to encourage a close and personal relationship between the employee and his superiors, where that relationship calls for loyalty and confidence. *Cf.* Cook County Teachers

Union, Loc. 1600 v. Byrd, 456 F.2d 882, 889–890 (7th Cir. 1972), cert. denied 409 U.S. 848, 93 S.Ct. 56, 34 L.Ed.2d 90; Albaum v. Carey, 310 F.Supp. 594, 596, (E.D.N.Y.1969).

Thus, the trial court wisely rejected Clark's contention that all of his actions of which the defendants complained were protected by the First Amendment. Instructions on the First Amendment rights of public school teachers were inapplicable to this case. Further, the theory of First Amendment rights urged upon the district court by plaintiff and as presented in his tendered instructions was overly broad. There was no First Amendment issue appropriate for consideration by the jury.

■■■ In regard to Clark's due process contention, we think that two recent Supreme Court decisions resolve that issue against the plaintiff. Board of Regents of State Colleges v. Roth, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972), held that a nontenured teacher employed under a one-year contract offering no promise of renewal was not deprived of his Fourteenth Amendment rights of "liberty" or "property" by a state university's failure to give him a statement of reasons for the nonrenewal of his contract and to grant him a hearing at which to challenge those reasons. The Court did note two possible exceptions to the rule it was enunciating; [3] however, those exceptional circumstances are not present in Clark's case. In a companion case to *Roth*, Perry v. Sindermann, *supra*, the Court held that a state college teacher, employed under a series of one-year contracts, who alleged that the college had a de facto tenure policy, was entitled to an opportunity to prove the validity of his claim to job tenure and, upon proof, to a hearing on the grounds for his nonretention. Plaintiff Clark, a temporary substitute teacher, clearly was not in an analogous position.[4]

■ Clark's final complaint is that the district court ' erred in directing a verdict for the defendants on the issue of conspiracy at the close of his case. The court did not err, for, quite simply, the plaintiff failed to make out a prima facie case. He did not substantiate his charge that the defendants held many clandestine conferences about him or that the actions the defendants did take revealed any illegal purpose.

Although Clark disclaims that he was raising an issue on appeal of the sufficiency of the evidence to support the jury verdict, a substantial portion of the argument addressed to us seems to be the sort that would have been appropriate if we were concerned with a de novo factual determination, which, of course, we are not. Further, it must be noted that

---

3. The two special situations were:

(1) The State, in declining to rehire a person, makes a charge against him that might seriously damage his standing and associations in his community. Such a charge might be, for example, that the employee had been guilty of dishonesty or of immorality. The purpose of notice and hearing then would be to provide the person with an opportunity to clear his name.

(2) The State, in declining to re-employ a person, imposes on him a stigma or other disability that forecloses his freedom to take advantage of other employment opportunities. The Court gave the example of where the State bars the person from all other public employment in State universities. It further explained that "[m]ere proof . . . that his record of nonretention in one job, taken alone, might make him somewhat less attractive to some other employers would hardly establish the kind of foreclosure of opportunities amounting to a deprivation of 'liberty.' "

4. *Perry* also held that lack of contractual or tenure right to re-employment, taken alone, does not defeat an ex-employee's claim *in federal district court* that the nonrenewal of his contract was based on his exercise of his constitutional rights and was, therefore, violative of his First and Fourteenth Amendment rights. In so deciding, the Court did not make "new" law; previous cases had made this point clear. Nevertheless, plaintiff Clark mistakenly interprets this holding of *Perry* to mean that if a teacher claims he was not rehired for constitutionally invalid reasons, he must be given a hearing *by the state school.*

at the time of the filing of briefs in this appeal the law of the circuit, upon which plaintiff in part relied, was found in Roth v. Board of Regents, 310 F.Supp. 972 (W.D.Wis.1970), aff'd, 446 F.2d 806 (7th Cir. 1971). The reversal of *Roth* (408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548) occurred subsequent to briefing but prior to oral argument.

In light of the above, we conclude that no reversible error occurred and the judgment of the district court is affirmed.

Affirmed.