**Phyllis B. HETRICK, Plaintiff-Appellant,**

v.

**Robert R. MARTIN, President of Eastern Kentucky University, and the Board of Regents of Eastern Kentucky University, Defendants-Appellees.**

No. 72-2168.

United States Court of Appeals, Sixth Circuit.

Argued April 12, 1973.

Decided June 15, 1973.

706

Robert Allen Sedler, Lexington, Ky., for plaintiff-appellant.

Ed W. Hancock, Atty. Gen. of Kentucky, Frankfort, Ky., George T. Ross, Richmond, Ky., John W. Palmore, Eastern Kentucky University, Richmond, Ky., John W. Palmore, Richmond, Ky., for defendants-appellees; John W. Palmore, George T. Ross, Richmond, Ky., on brief.

Before PECK, McCREE and KENT,* Circuit Judges.

McCREE, Circuit Judge.

This appeal requires us to decide whether the First Amendment prevents a state university from discharging a teacher whose pedagogical style and philosophy do not conform to the pattern prescribed by the school administration. The district court, sitting without a jury, held that the Constitution did not bar officials of Eastern Kentucky University from refusing to renew plaintiff's teaching contract on the ground of impermissible deviation from the teaching standards thought appropriate by her superiors. We affirm.

Plaintiff Phyllis Hetrick was employed as a nontenured assistant English professor at Eastern Kentucky for the 1969–70 school year, and during her first semester was assigned to teach two sections of freshman composition, one sophomore literature course, and an upper level modern drama course. Her troubles with the school administration apparently began when unnamed students as well as the parents of one student complained about certain of her in-class activities. Specifically, at one point, in an attempt to illustrate the "irony" and "connotative qualities" of the English language, she told her freshman students "I am an unwed mother." At the time, she was a divorced mother of two, but she did not reveal that fact to her class. Also, she apparently on occasion discussed the war in Vietnam and the military draft with one of her freshman classes. The district court found that even though the school administration was concerned about the appropriateness of these occurrences, "it does not appear that any of the faculty members felt that Dr. Hetrick had on those particular occasions exceeded the bounds of her teaching prerogative." The student complaints during October and November 1969 allegedly centered on their inability to comprehend what she was attempting to teach them or what was expected of them, although no students were produced at trial to testify that he or she had complained about or was dissatisfied with plaintiff's teaching methods.

Other conflicts between Dr. Hetrick and her superiors developed. She did not obtain her PhD until late in her second semester, although she agreed that she would do so by the close of the first semester. She covered only 11 plays in her modern drama course, from a textbook that had been ordered by her predecessor, and the head of the English Department, Dr. Thurman, testified that plaintiff had been told that she was expected to cover between 20 and 25 plays and that he thought the work load she assigned was too light.

In February 1970, Dr. Thurman convened a "secret evaluating committee" of four other faculty members of the English Department to meet with him. The committee, according to Dr. Thurman, was to evaluate all the nontenured teachers. Dr. Thurman recommended to the committee that plaintiff not be rehired for the following year because: her

* Judge Kent participated in the decision in this case and concurred in this opinion prior to his death on May 28, 1973.

freshman class assignments were inconclusive; she was inclined to discuss extraneous matter in class; she lacked "a sense of camaraderie" and did not seem to adjust to the other members of the English Department; and she had not fulfilled her PhD requirements as promised. The committee voted to terminate Dr. Hetrick.

The district court found that these reasons asserted by Dr. Thurman were "supported by fact." However,

the court finds from the tenor of the evidence, that the nonrenewal of Dr. Hetrick's contract was not based so much on those specific reasons, as it was on the feeling of Dr. Thurmond [sic] and the other faculty members of the English Department that Dr. Hetrick's teaching philosophy and the manner in which she implemented it were not adaptable to the achievement of the academic goals of the University.

The evidence to which the court referred consisted in part of plaintiff's testimony and that of her students, and the testimony of the defendants concerning what was expected of teachers at Eastern Kentucky. The school administration considered the students as generally unsophisticated and as having "somewhat restrictive backgrounds," and for this reason apparently expected the teachers to teach on a basic level, to stress fundamentals and to follow conventional teaching patterns—in a word, to "go by the book." Plaintiff's evidence, on the other hand, tended to show that her teaching emphasized student responsibility and freedom to organize class time and out-of-class assignments in terms of student interest, all in an effort, she claims, to teach them how to think rather than merely to accept and to parrot what they had heard.

After her termination by the University, plaintiff brought this action under 42 U.S.C. § 1983 for declaratory and injunctive relief against the president and regents of Eastern Kentucky University. She asserted that her First and Fourteenth Amendment rights had been violated by her termination without a hearing or written statement of reasons, on an arbitrary basis, for making in-class statements about the war and the draft, and because of her beliefs and ideas. The intervening decisions of the Supreme Court in Board of Regents of State College v. Roth, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972), and Perry v. Sindermann, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972), narrowed the issue in this case to whether plaintiff had been terminated for conduct on her part protected by the First Amendment. See Perry v. Sindermann, *supra*, 408 U.S. at 596–598, 92 S.Ct. 2694.

The district court concluded that the decision not to renew plaintiff's contract was the result of defendants' "concern for her teaching methods and ability," and was not prompted by her exercise of First Amendment rights. In discussing the scope of the protection afforded teachers by the First Amendment, the court stated:

The First Amendment guarantee of academic freedom provides a teacher with the right to encourage a vigorous exchange of ideas within the confines of the subject matter being taught, but it does not require a University or school to tolerate any manner of teaching method the teacher may choose to employ. A University has a right to require some conformity with whatever teaching methods are acceptable to it. In this case it simply appears that Dr. Hetrick's teaching techniques were not acceptable to the University. The court is not in a position to weigh the merits of Dr. Hetrick's educational philosophy—it may be that her methods of teaching were and are more desirable than those embraced by the other members of the English Department—but the fact that the University decided that

they were not and chose not to renew her contract, does not mean that her constitutional rights to academic freedom and freedom of speech were impinged.

In a memorandum opinion filed with the court's findings of fact and conclusions of law, the court elaborated on its findings in this regard:

It is Dr. Hetrick's position that the non-renewal of her contract resulted from certain statements she made in her classes relating to the Vietnam War and the military draft. Were this contention adequately corroborated it may be that relief would be proper, however, the evidence produced at the hearing leads only to the conclusion that the University's determination not to rehire was based solely upon concern for her pedagogical attitudes. Although the court is inclined to believe that the classroom inadequacies that Dr. Hetrick was alleged to have displayed—inconclusive assignments, extraneous classroom discussions, and insufficient coverage of suggested materials—were largely superficial and thus easily correctable, it is not the duty of the court to evaluate the wisdom of the University's decision not to renew the contract. It simply seems that Dr. Hetrick's teaching methods were too progressive, or perhaps less orthodox than the other faculty members in her department felt were conducive to the achievement of the academic goals they espoused. The court must conclude that a State University has the authority to refuse to renew a non-tenured professor's contract for the reason that the teaching methods of that professor do not conform with those of the tenured faculty or with those approved of by the University.

On appeal, plaintiff has raised two issues: does it violate the First Amendment for a public university to terminate a teacher because her teaching methods and educational philosophy do not conform with those approved by the university; did the district court err in concluding that the decision to terminate was not based on or influenced by constitutionally protected statements she made in the classroom, *i. e.*, the "unwed mother" remark and statements about the Vietnam war and the draft?

█ With respect to the latter issue, assuming *arguendo* that the uttering of these in-class statements would be protected by the First Amendment,[1] we conclude upon examination of the record that the findings of the district court are fully supported by the evidence and that plaintiff was not discharged because of any statements she may have made.

█ Thus, we are squarely presented with the question whether the administration of a public school may, consistent with the First Amendment, fail to renew a nontenured teacher because of displeasure with her "pedagogical attitudes." We conclude, as did the district court, that it may.

This is not a case of dismissal of a teacher for exercising her right as a citizen to comment on matters of public concern, *see* Pickering v. Board of Education, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968); cf. Tinker v. Des Moines Independent Community School District, 393 U.S. 503, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969), or a case of a state's attempting to regulate the fitness and competence of its teachers by investigating the teachers' out-of-class associations, *see* Keyishian v. Board of Regents, 385 U.S. 589, 87 S.Ct. 675, 17 L.Ed.2d 629 (1967); Shelton v. Tucker, 364 U.S. 479, 81 S.Ct. 247, 5 L.Ed.2d 231 (1960); Sweezy v. New Hampshire, 354 U.S. 234, 77 S.Ct. 1203, 1 L.Ed.2d

1. *Compare, e. g.*, Mailloux v. Kiley, 323 F. Supp. 1387 (D.Mass.), aff'd, 448 F.2d 1242 (1st Cir. 1971), *with* Clark v. Holmes, 474 F.2d 928 (7th Cir. 1972), cert. denied, 411 U.S. 972, 93 S.Ct. 2148, 36 L.Ed.2d 695 (1973).

1311 (1957), or even a case of a state's effort to restrict in-class utterances or assignments in order to maintain curriculum control, *compare* Keefe v. Geanakos, 418 F.2d 359 (1st Cir. 1969); Mailloux v. Kiley, 323 F.Supp. 1387 (D. Mass.), aff'd, 448 F.2d 1242 (1st Cir. 1971); Parducci v. Rutland, 316 F.Supp. 352 (M.D.Ala.1970), *with* Clark v. Holmes, 474 F.2d 928 (7th Cir. 1972), cert. denied, 411 U.S. 972, 93 S.Ct. 2148, 36 L.Ed.2d 695 (1973); Parker v. Board of Education, 237 F.Supp. 222 (D.Md.), aff'd, 348 F.2d 464 (4th Cir. 1965), cert. denied, 382 U.S. 1030, 86 S.Ct. 653, 15 L.Ed.2d 543 (1966); *cf.* Epperson v. Arkansas, 393 U.S. 97, 89 S.Ct. 266, 21 L.Ed.2d 228 (1968); Meyer v. Nebraska, 262 U.S. 390, 43 S.Ct. 625, 67 L.Ed. 1042 (1923); *see generally* Developments in the Law—Academic Freedom, 81 Harv.L.Rev. 1045, 1051–54 (1968).

■ Instead, this is a case of the nonrenewal of a nontenured teacher, who was not even entitled to notice and hearing upon receipt of the university's decision not to renew her contract. Board of Regents of State College v. Roth, *supra*. Although her renewal could not have been denied on a basis that invaded a constitutionally protected interest such as her interest in freedom of speech, Perry v. Sindermann, *supra*, 408 U.S. at 597, 92 S.Ct. 2694, under the holding in Board of Regents of State College v. Roth, *supra*, she presumably could have been terminated for entirely arbitrary reasons that did not invade First Amendment rights. She seeks to escape the effect of this principle by claiming that what is at issue here is her constitutional right to "teach her students to think" and that the First Amendment protects her from termination for using teaching methods and adhering to a teaching philosophy that are "well-recognized within the profession" (although it does not appear that plaintiff introduced expert testimony on this question,

*Compare* Mailloux v. Kiley, *supra*, 323 F.Supp. 1387). Plaintiff would thus have us convert the vague, inclusive term "teaching methods" into a specific, protected form of speech that cannot be considered by a school administration in determining whether a nontenured teacher should be renewed. In effect, plaintiff would have us substitute the First Amendment for tenure, and would thereby succeed in elevating contract law to constitutional status.

We do not accept plaintiff's assertion that the school administration abridged her First Amendment rights when it refused to rehire her because it considered her teaching philosophy to be incompatible with the pedagogical aims of the University. Whatever may be the ultimate scope of the amorphous "academic freedom" guaranteed to our Nation's teachers and students, Healy v. James, 408 U.S. 169, 180–181, 92 S.Ct. 2338, 33 L.Ed.2d 266 (1972), *see generally* Developments in the Law—Academic Freedom, *supra*, it does not encompass the right of a nontenured teacher to have her teaching style insulated from review by her superiors when they determine whether she has merited tenured status just because her methods and philosophy are considered acceptable somewhere within the teaching profession. A contrary holding would effectively emasculate the holding in Board of Regents of State College v. Roth, *supra*, by rendering every nonrenewal decision a likely candidate for a court suit, and we decline to accomplish the *sub silentio* overruling of that recent Supreme Court decision as well as our own in Orr v. Trinter, 444 F.2d 128 (6th Cir. 1971), cert. denied, 408 U.S. 943, 92 S.Ct. 2847, 33 L.Ed.2d 767 (1972).

For the foregoing reasons, and the reasons advanced by the district court, the judgment of the district court is affirmed.