MARILYN WINSTON AND SOUTH PLAINFIELD EDUCATION ASSOCIATION, PLAINTIFFS-RESPONDENTS, v. BOARD OF EDUCATION OF THE BOROUGH OF SOUTH PLAINFIELD, DEFENDANT-APPELLANT, AND STATE BOARD OF EDUCATION, APPELLANT.

Argued February 20, 1974—Decided May 7, 1974.

*Mr. Robert J. Cirafesi* argued the cause for the appellant Board of Education of the Borough of South Plainfield.

*Mr. Theodore A. Winard,* Assistant Attorney General, argued the cause for the appellant State Board of Education (*Mr. William F. Hyland,* Attorney General, attorney; *Mr. Stephen L. Skillman,* Assistant Attorney General, of counsel; *Mrs. Virginia Long Annich,* Deputy Attorney General, on the brief).

*Mr. Abraham L. Friedman* argued the cause for the respondents (*Messrs. Rothbard, Harris & Oxfeld,* attorneys; *Mr. Emil Oxfeld,* of counsel).

PER CURIAM. The Appellate Division, in a comprehensive opinion reported at 125 *N. J. Super.* 131 (1973), reversed and remanded to the Commissioner of Education for further proceedings. We agree that the matter should go back to the Commissioner for a plenary hearing and therefore affirm.

The plaintiff Marilyn Winston was a South Plainfield schoolteacher who failed to receive her fourth annual contract and was thereby denied tenure. She unsuccessfully pursued the internal grievance procedures available to her under the collective agreement between the plaintiff Education Association and the respondent Board of Education and ultimately filed a petition with the State Commissioner of Education under *N. J. S. A.* 18A:6–9. The Education Association joined her as a petitioner and they alleged that the determination not to renew her contract was made in retaliation for her exercise of the right to free speech and was

therefore constitutionally impermissible. See *Pickering v. Board of Education*, 391 *U. S.* 563, 88 S. Ct. 1731, 20 *L. Ed. 2d* 811 (1968) ; *Perry v. Sindermann*, 408 *U. S.* 593, 92 S. Ct. 2694, 33 *L. Ed. 2d* 570 (1972) ; Van Alstyne, "The Constitutional Rights of Teachers and Professors," 1970 *Duke L. J.* 841.

The petition, which was duly verified, set forth specifics in support of her assertion that she was denied her rights under the federal constitution. Thus, as the Appellate Division summarized it (125 *N. J. Super.* at 144), she set forth instances and details indicating that she had "questioned policy decisions, made suggestions and recommendations, sought information or reasons for certain administrative decisions, expressed criticisms among teachers concerning certain administrative directives, and the like." She also set forth certain remarks which appeared in her supervisor's evaluation of her in support of her position that she was not retained because of public remarks by her which she asserts were constitutionally protected.

The Board of Education moved before the Commissioner for a dismissal of the petition. The motion was heard by a hearing examiner who submitted his report to the Commissioner. Thereafter the Commissioner handed down his decision which dismissed the petition. He expressed the view that the Association had no standing but recognized that Mrs. Winston did have standing. He further recognized that it would be constitutionally impermissible to refuse to reengage a nontenured teacher in retaliation for the exercise of her right to free speech but pointed out that a petition so grounded must contain more than mere "naked allegations" to withstand a motion to dismiss, citing his earlier decision in *Ruch v. Board of Education of Greater Egg Harbor Regional High School District, Atlantic County*, 1968 S. L. D. 7.

The Commissioner's dismissal of the petition was appealed to the State Board of Education which, after receiving the report of its Law Committee, affirmed the Com-

missioner's decision on the basis of his opinion. On the plaintiffs' appeal to the Appellate Division they advanced various contentions which were dealt with fully in its opinion under three points. We agree with its holding under the first point that the plaintiffs should have been afforded timely opportunity to examine not only the report of the Commissioner's hearing examiner but also the report of the Law Committee of the State Board. 125 *N. J. Super.* at 137–140; *In re Masiello,* 25 *N. J.* 590, 605 (1958); *Quinlan v. Bd. of Ed. of North Bergen Tp.,* 73 *N. J. Super.* 40, 53 (*App. Div.* 1962); *cf. Fifth St. Pier Corp. v. Hoboken,* 22 *N. J.* 326, 337–339 (1956).

We also agree with the Appellate Division's holding under the second point that, in view of the special circumstances presented, the Education Association should have been permitted to continue as a copetitioner along with Mrs. Winston. 125 *N. J. Super.* at 140–142. Practically the matter is of little moment since Mrs. Winston and the Education Association have at all times been represented by the same attorney who has properly confined his contentions to those fully available to Mrs. Winston. The Attorney General in his brief on behalf of the State Board seems concerned that the Appellate Division's holding on the standing issue might be construed to permit the Education Association to go beyond the issues available to Mrs. Winston. We find no basis for his concern.

The third and final point dealt with by the Appellate Division related to the Commissioner's position that the petition contained nothing more than "naked allegations" and and was therefore subject to dismissal on its face. The Appellate Division found much beyond "bare assertions" in the verified petition and enough to call for the taking of testimony before the Commissioner. 125 *N. J. Super.* at 144–145. We agree and consider the Appellate Division's approach to have been compatible with settled procedural philosophies in the treatment of motions for dismissal and summary judgment. See *Ridgefield Park v. Bergen Co. Bd.*

*of Taxation,* 31 *N. J.* 420, 432 (1960) ; *Ruvolo v. American Cas. Co.,* 39 *N. J.* 490, 499 (1963).

On the remand to the Commissioner the Board of Education seeks guidelines beyond those found in the opinion of the Appellate Division. However, we consider that binding expressions should not be made on the meagre record before us but should await a record embodying oral testimony which may include not only the words spoken by the teacher but also descriptions of the accompanying colorations, the circumstances and the other pertinent factors. In the meantime the Commissioner will of course have the full benefit of opinions in the federal cases which are being handed down with increased frequency. See, *e. g., Pickering v. Board of Education, supra,* 391 *U. S.* 563, 88 S. Ct. 1731, 20 *L. Ed 2d* 811; *Perry v. Sindermann, supra,* 408 *U. S.* 593, 92 S. Ct. 2694, 33 *L. Ed. 2d* 570; *Smith v. Losee,* 485 *F. 2d* 334 (10 *Cir.* 1973), petition for *certiorari* pending; *Gieringer v. Center School District,* 477 *F. 2d* 1164 (8 *Cir.*), cert. denied, 414 *U. S.* 832, 94 S. Ct. 165, 38 *L. Ed. 2d* 66 (1973) ; *Hetrick v. Martin,* 480 *F. 2d* 705 (6 *Cir.*), cert. denied, 414 *U. S.* 1075, 94 S. Ct. 592, 38 *L. Ed. 2d* 482 (1973) ; *Clark v. Holmes,* 474 *F. 2d* 928 (7 *Cir.* 1972), cert. denied, 411 *U. S.* 972, 93 S. Ct. 2148, 36 *L. Ed. 2d* 695 (1973) ; *Chitwood v. Feaster,* 468 *F. 2d* 359 (4 *Cir.* 1972) ; *Fluker v. Alabama State Board of Education,* 441 *F. 2d* 201 (5 *Cir.* 1971) ; *Jones v. Battles,* 315 *F. Supp.* 601 *(D. Conn.* 1970) ; *cf. Arnett v. Kennedy,* —— *U. S.* ——, 94 S. Ct. 1633, 40 *L. Ed. 2d* 15 (1974).

In *Pickering, supra,* a teacher was dismissed because he wrote a letter to a local newspaper criticizing the manner in which the school superintendent had handled past proposals to raise school revenues; the Supreme Court held that, in the absence of proof of false statements knowingly and recklessly made, the teacher's exercise of his right to speak on issues of public importance may not furnish the basis for dismissal. 391 *U. S.* at 574–575, 88 S. Ct. at 1737–1738, 20 *L. Ed. 2d* at 821. In *Perry, supra,* a nontenured teacher alleged that

his contract was not renewed because he testified before the Legislature in support of a change opposed by the Regents. The Supreme Court reversed a summary judgment against him, holding that if he proved his allegation he would be entitled to be rehired. 408 *U. S.* at 598, 92 S. Ct. at 2698, 33 *L. Ed. 2d* at 578. The holdings in *Pickering* and *Perry* have in some instances been applied to protect teachers' expressions though made not to the general public but at meetings of faculty, school administrators, etc. See *Smith v. Losee, supra,* 485 *F. 2d* 334; *Gieringer v. Center School District, supra,* 477 *F. 2d* 1164.

█ *Pickering* and *Perry* expressly recognize, as do all of the other cited federal decisions, that the teacher's right to speak is not an absolute one but may be limited for the protection of the State's legitimate interests. As the Court put it in *Pickering,* the problem is to arrive at a proper balance between the teacher's interests in speaking freely and the State's interests in promoting the efficiency of its educational system or other public service. 391 *U. S.* at 568, 88 S. Ct. at 1734, 1735, 20 *L. Ed. 2d* at 817. In *Clark v. Holmes, supra,* 474 *F. 2d* 928 the court noted that while academic freedom is undoubtedly a safeguarded right it is not a license for uncontrolled expressions which are internally destructive of the proper functioning of the institution. It noted further that *Pickering* itself suggested that "certain legitimate interests of the State may limit a teacher's right to say what he pleases: for example, (1) the need to maintain discipline or harmony among co-workers; (2) the need for confidentiality; (3) the need to curtail conduct which impedes the teacher's proper and competent performance of his daily duties; and (4) the need to encourage a close and personal relationship between the employee and his superiors, where that relationship calls for loyalty and confidence." 474 *F. 2d* at 931.

In *Chitwood v. Feasler, supra,* the contracts of several non-tenured college teachers were not renewed. They filed a complaint alleging, *inter alia,* that their contracts were not re-

newed in retaliation for their participation in protest movements and their public statements critical of the college and its officials. On the basis of the affidavits before it, the federal district court entered summary judgment against the teachers but this was vacated by the Court of Appeals which remanded the matter for trial. Its opinion contained the following paragraph which may perhaps be of some aid to the Commissioner in his administrative efforts to achieve a proper balance between the acknowledged interests of academic freedom and the needs of institutional efficiency:

Some of the affidavits refer to what seems to be bickering and running disputes with the department heads. We do not intend to suggest that that kind of speech is protected by the First Amendment in the sense that it may not be considered in connection with the termination of the employment relationship. A college has a right to expect a teacher to follow instructions and to work cooperatively and harmoniously with the head of the department. If one cannot or does not, if one undertakes to seize the authority and prerogatives of the department head, he does not immunize himself against loss of his position simply because his noncooperation and aggressive conduct are verbalized. 468 *F. 2d* at 360–361.

The judgment of the Appellate Division is affirmed.

*For affirmance* — Chief Justice HUGHES and Justices JACOBS, HALL, MOUNTAIN, SULLIVAN, PASHMAN and CLIFFORD—7.

*For reversal* — None.