Cheryl Anne RENFROE, Plaintiff,

v.

Dr. John KIRKPATRICK, Superintendent, Piedmont City Schools; Sherman D. Meers, Principal, Southside Elementary School; and Piedmont City Board of Education, Defendants.

Civ. A. No. CV81-PT-1234-E.

United States District Court,
N.D. Alabama, E.D.

Nov. 5, 1982.

Jack S. Wallach, Anniston, Ala., for plaintiff.

John R. Phillips, Phillips & Rice, Anniston, Ala., for defendants.

## MEMORANDUM OPINION

PROPST, District Judge.

This matter is before the court upon defendants' Motion for a Judgment Notwithstanding the Verdict (JNOV) and for the conditional grant of a new trial pursuant to Rule 50(b), (c) of the Federal Rules of Civil Procedure. Plaintiff has also moved for the award of attorneys' fees.[1]

This case was tried to a jury which returned a verdict on August 17, 1982. The jury returned a verdict for plaintiff and against all three defendants for compensatory damages in the amount of $6,400.00 and punitive damages against defendants Dr. John Kirkpatrick and Sherman D. Meers in the amount of $12,500.00.

---

1. The court has previously denied plaintiff's request for reinstatement.

The law places a premium on the jury's function as the finder of fact. The jury's prerogative will be usurped only under a strict standard which requires the court to determine, as a question of law, that there was insufficient evidence to present a jury issue. A motion for JNOV should be granted only when reasonable minds could not differ on the conclusions to be drawn from the evidence viewing the evidence in the light most favorable to the party against whom the motion is made. *Lubbock Feed Lots, Inc. v. Iowa Beef Processors,* 630 F.2d 250 (5th Cir.1980):

■ Trial courts have been admonished by appellate courts that it is wise and expedient to reserve rulings on motions for directed verdict until the jury has had the opportunity to weigh the evidence. *Holmgren v. Massey-Ferguson, Inc.,* 516 F.2d 856 (8th Cir.1975). This being the case, it is obvious that a jury verdict cannot add any sanctity or added strength to a judgment if the case was originally one in which a motion for directed verdict was justifiably sustainable.[2] This court had doubts during trial as to the sufficiency of the evidence, but must now more totally focus on the issue.

This case was presented to the jury solely on a claim that defendants' failure to renew plaintiff's contract as a non-tenured teacher was motivated because of the filing of a grievance. Plaintiff's remaining claim, as framed in the relevant part of her complaint, is that:

On or about April 14, 1981 plaintiff filed a grievance, pursuant to the grievance procedure adopted by defendant, Piedmont City Board of Education, on May 10, 1977, wherein plaintiff grieved Dr.

John R. Kirkpatrick's determination that she would job-share during the 1981–1982 school year. *This* grievance was presented to defendant, Sherman D. Meers, and signed by him. He referred the grievance to defendant, Dr. John R. Kirkpatrick. *This* grievance was then presented by plaintiff to defendant, Piedmont City Board of Education, during a meeting on or about the evening of April 14, 1981. . . . In reprisal for filing *the aforesaid* grievance, defendant, Dr. John R. Kirkpatrick, and defendant, Sherman D. Meers, conspired against plaintiff and nominated *a less qualified* teacher than plaintiff for a full time kindergarten teaching position and did not nominate plaintiff even for the job sharing position plaintiff was told she would occupy *the day before she filed the grievance.* (Emphasis added.)

Plaintiff claims that her contract would have been renewed but for consideration by the defendants of alleged First Amendment activities. See *Mt. Healthy City Board of Ed. v. Doyle,* 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977). This claim was made pursuant to 42 U.S.C. § 1983, with jurisdiction asserted under 28 U.S.C. § 1343.[3]

■ This court is not insensitive to claimed deprivations of constitutional rights.[4] However, this court is likewise sensitive to claims brought under the guise of constitutional deprivations, which are in reality premised on a non-constitutional basis. The court is further of the opinion that by merely asserting a constitutional deprivation, one does not avoid the usual scrutiny by the court to determine if the claim is bona fide. There is empirical evidence that parties quite often attempt to unduly

---

**2.** The obvious purpose of reserving ruling is to avoid a retrial when an appellate court disagrees with the trial court on the sufficiency of the evidence.

**3.** Prior to trial, the court granted defendants' motion for summary judgment with regard to a deprivation of a protected liberty interest under the Fourteenth Amendment. The court's action was based on the lack of evidence that the conduct alleged was sufficient to impugn a liberty interest and the fact that there was no contemporaneous publication.

**4.** In *O'Hara v. City of Athens,* CV81–PT–5159–NE, ND/AL, this court awarded substantial damages of $61,000.00 to and directed the reinstatement of Kathi O'Hara because of her being deprived of a constitutional right to due process.

stretch established constitutionally protected interests.[5]

Plaintiff was a non-tenured teacher in the school system of the City of Piedmont during the school year 1980–81. This system was administered by the defendant Piedmont City Board of Education (Board). The Superintendent of Education was defendant Dr. John Kirkpatrick (Kirkpatrick). Plaintiff's principal was defendant Sherman D. Meers (Meers).

Non-tenured teachers are appointed by the Board based upon nominations by the superintendent. The superintendent confers with the principal as to positions within the principal's school. The Board may only appoint non-tenured teachers who are nominated by the superintendent. The Board can decline to accept his nomination, but cannot appoint persons not so nominated.

The school year 1980–81 was plaintiff's second year of employment by the Board. The school year 1980–81 was the first year of employment of Sherri Jones (Jones) by the Board.

Plaintiff and Jones performed the same or similar teaching function for the Board but in separate classes at the school of which Meers was the principal. In early 1981, defendant Kirkpatrick made the decision, because of lack of anticipated funds, that one of the positions filled by plaintiff and Jones would have to be eliminated. On March 18, 1981, the defendant Kirkpatrick, after consultation with Meers and Kirkpatrick's staff, determined to offer the one full-time position to Jones for the 1981–82 school year. Plaintiff makes no claim, as she could not, that she had any protected property interest in the position or that the March 18, 1981 decision was affected by any exercise of First Amendment rights by plaintiff.

Between March 18, 1981 and April 10, 1981, defendant Kirkpatrick considered the possibility of plaintiff and Jones sharing the one full time position by each of them teaching part-time. Apparently, the decision of March 18 was not communicated to plaintiff or Jones before April 10.

On April 10, 1981, Kirkpatrick went to plaintiff's school to discuss the job sharing with plaintiff and Jones. His apparent intention was to determine if both plaintiff and Jones were receptive to his proposal that they share the job.[6] Plaintiff was absent from the school on Friday, April 10. Jones was present and immediately acquiesced in Kirkpatrick's job share proposal. Kirkpatrick returned to the school on April 13 to discuss the proposal with plaintiff.

Before Kirkpatrick returned to the school on April 13, plaintiff had heard of Kirkpatrick's proposal and had begun to seethe about the prospect.[7] It is patently obvious from the evidence that plaintiff was not receptive to the idea of job sharing.[8] Reasonable jurors could not fail to find that she immediately communicated that she was strongly opposed to having to job share with Jones. The evidence at the trial was that plaintiff's opposition was premised on her perception that she was a better teacher than Jones and that Jones was being offered even a part-time job because her husband was a coach in the Board's system. Plaintiff was further disturbed because she had been employed by the Board for a year longer than Jones.[9] There is no doubt that,

---

5. Such claims tend to dilute public regard for even legitimate claims. Perversions of the Constitution, like violations of the Constitution, should not be tolerated.

6. or, according to plaintiff's testimony, to tell them that they would job share.

7. Plaintiff may find fault with the court's factual characterization of her state of mind. However, reasonable men could not disagree that this state had developed.

8. There is a dispute as to whether plaintiff indicated to Kirkpatrick that she specifically

*refused* to job share. The jury apparently decided this dispute in plaintiff's favor and the court will not question this finding although there was substantial evidence to the contrary.

9. Evidence of these matters was presented to the jury. Although the evidence was relevant to determining the defendants' motivation in subsequently failing to offer plaintiff even part-time employment, there was a grave danger that the evidence could be considered for the improper purpose of deciding whether the initial decisions of Kirkpatrick to offer either full-time or part-time employment to Jones were

even if plaintiff did not refuse the offer, she was unquestionably not receptive to the idea. Neither did she accept the proposal. When Kirkpatrick approached her, plaintiff was a non-tenured teacher with no protected property interest. At this stage there was no basis for any claimed constitutional deprivation. Plaintiff was so emphatic in her protestations that Kirkpatrick advised her to obtain an attorney. Undoubtedly, the rift had already developed.

Plaintiff argues that the evidence supports a finding that Kirkpatrick determined that the teachers *would* job share without prior consultation with the teachers and without regard to their assent to do so. The court finds that any such finding by the jury would be against the great weight of the evidence. The court can clearly reach this conclusion with respect to the Motion for New Trial, but not necessarily with respect to the Motion for Judgment Notwithstanding the Verdict. Plaintiff did emphasize that she was told that she would be job sharing. In doing so, she showed an unusual perception, for a lay person, of the significant difference between being *told* that she would job share and being *asked* to job share. On one occasion she was asked by the defendants, "And, when he asked you to job share, it was no surprise to you; was it?" Her *alert* response was, "Yes, it was. And he didn't *ask* me to job share." (Emphasis added.) On another occasion, plaintiff was asked, "And, that was all before he asked you, would you job share?" Her immediate response was, "That was before he *told* me that I would be job sharing." (Emphasis added).

In other testimony, plaintiff testified that *Kirkpatrick told* her "told me that I would, and if I were to accept, I had to say nothing. But to refuse, I would have had to say, I am not going to do that." Plaintiff obviously felt it crucial to her case to insist that Kirkpatrick had already made his final decision that she job share *before* speaking to her in order to show that she was de-

prived of a right. Plaintiff did acknowledge that she told Kirkpatrick on April 13 that she did not want to job share.

After leaving Kirkpatrick on April 13, plaintiff immediately began planning to file a grievance with the Board to protest the fact that she was not being offered full-time employment. Kirkpatrick had already determined to nominate Jones for a full time position. The fact that he had immediately made such a decision after the confrontation with plaintiff is not disputed nor is it disputable. The great weight of the evidence is, if indeed it is even disputed by contradictory evidence, that Kirkpatrick actually mailed his nominations in writing on April 13, 1981 after the meeting with plaintiff. Common sense dictates that he did not leave the meeting with plaintiff with any intention of nominating her for any position. The filing of the grievance was a nullity. The Board was scheduled to meet on Tuesday, April 14. Contrary to Board rules, plaintiff began personally contacting Board members before the meeting. Plaintiff's written grievance was filed with the Board and was heard on April 14. After first hesitating, the Board ultimately accepted Kirkpatrick's nomination of Jones to the full-time position.

Plaintiff claims that she was denied even a part-time position because she filed the grievance. The jury *could* have reasonably found that, after the Board's hesitation to accept his nomination, Kirkpatrick raised as an issue the fact that he felt plaintiff had been insubordinate in her response to him *on the previous day*. The jury could have further reasonably found that the Board's ultimate acceptance of Kirkpatrick's nomination of Jones was at least partly motivated by Kirkpatrick's insistence on this point. However, the court is of the opinion, notwithstanding this, that plaintiff's claim is a claim of an entitlement to the job masquerading as a First Amendment claim. Kirkpatrick's statements at the Board meeting were made *after* he had determined not to

---

fair; even though there could have been no possibility of First Amendment implications

when these decisions were made.

nominate plaintiff. He had a perfect right to argue that he should not be forced to nominate a teacher who not only did not want to job share, but who, in his judgment, stated so in an insubordinate manner. Only by twisted logic could one find that the plaintiff's filing of the grievance was a substantial or motivating factor in Kirkpatrick's decision not to nominate plaintiff. It is even more apparent that plaintiff has not proved by a preponderance of substantial evidence that the filing of the grievance was a substantial or motivating factor in the Board's decision, or in any role which Meers may have played.

The Supreme Court has made it clear that public employment cannot be conditioned upon the denial of constitutional rights. *Perry v. Sinderman,* 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972). A claim under the First Amendment is not defeated by the fact that a teacher does not have tenure. A non-tenured teacher may establish a claim if a decision not to rehire her was made by reason of her exercise of constitutionally protected First Amendment freedoms. *Perry v. Sinderman, supra; Mt. Healthy City Board of Education v. Doyle, supra.*

In *Pickering v. Board of Education,* 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968), the Supreme Court said that the First Amendment requires striking "[a] balance between the interests of the teacher, as a citizen, in commenting upon matters of *public concern* and the interest of the State, as an employer, in promoting the efficiency of the public service it performs through its employees." 391 U.S. at 568, 88 S.Ct. at 1734 (emphasis added). *Pickering* also referred to "The public interest in having free and unhindered debate on matters of public importance...." 391 U.S. at 573, 88 S.Ct. at 1737.

Once it is established that a particular expression is protected by the First Amendment, the plaintiff must further show that the constitutionally protected conduct was a "motivating" or "substantial" factor in the Board's decision not to rehire plaintiff. *Mt. Healthy, supra.* If plaintiff establishes by a preponderance of the evidence that her conduct was constitutionally protected, and that it was a motivating factor in the Board's decision not to rehire her, the Board must then prove by a preponderance of the evidence that it would have reached the same decision as to plaintiff's reemployment even in the absence of the protected conduct.

This is not a case where the defendants' initial decision to prefer Jones over plaintiff can be said to have been motivated by any consideration of protected First Amendment activities. It is also clear to this court that at the time Kirkpatrick approached Jones and plaintiff, he was not bound to recommend job sharing to the Board. His only likely reason for contacting Jones and plaintiff was to see how they responded before he made his recommendation. Had this not been the case, he could have simply made the recommendation without prior consultation, received the Board's approval, and then notified Jones and plaintiff.

When Kirkpatrick conferred with plaintiff and determined that she was not receptive to the idea of job sharing, his reversion to his original decision was not a violation of any right enjoyed by plaintiff. To argue to the contrary is to point to a phantom constitutional "pea" under a hastily shifted "shell." The court is aware that proof of causation under the *Mt. Healthy* test is a question of fact. *Van Ooteghem v. Gray,* 654 F.2d 304 (5th Cir.1981). This does not, however, absolve the court of its responsibility of determining if there is substantial evidence of causation.

It should be remembered that Kirkpatrick had no duty to reconsider his decision made in March to nominate Jones only. He had no duty to approach plaintiff at all. Under plaintiff's theory, she was in a position to fail to acquiesce in Kirkpatrick's proposal that he nominate Jones and herself to share the position, and convert his subsequent failure to nominate her into a denial

of a First Amendment right.[10] Plaintiff's argument ignores the fact that an element of successful job sharing is willing and cooperative collaborators. Forced job sharing would not be appropriate. Even if it is credible that Kirkpatrick assumed that the teachers were amenable to job sharing without first discussing it with them, he had a right to change his mind after determining that this was not true. His approach was a perfectly reasonable one and should not be deemed to have cast him in a Catch 22 posture.

The trial of the case ultimately evolved into a consideration of the relative qualifications of plaintiff and Jones and the fairness of Kirkpatrick's initial decision to nominate Jones for a full-time position or his later consideration of the possibility of job sharing. Because of the lack of a true First Amendment question, the trial actually became a reassessment of Kirkpatrick's original judgment to favor Jones over plaintiff.[11]

This court realizes that neither the Fifth Circuit nor the Eleventh Circuit have adopted[12] the position of other circuits, suggested by *Pickering, supra,* that statements dealing with internal matters of school system "do not invoke First Amendment protection." *Schmidt v. Fremont County School Dist. No. 25, Wyo.,* 558 F.2d 982, 984–85 (10th Cir.1977); *Key v. Rutherford,* 645 F.2d 880 (10th Cir.1981); *Clark v. Holmes,* 474 F.2d 928 (7th Cir.), *cert. denied,* 411 U.S. 972, 93 S.Ct. 2148, 36 L.Ed.2d 695 (1973); *Chitwood v. Feaster,* 468 F.2d 359 (4th Cir.1972); *McGill v. Board of Education of Pekin Elementary School,* 602 F.2d 774 (7th Cir.1979). However, the arguments which support such a position lend

further strength to this court's conclusion that there is no true First Amendment violation here, but merely an illusory one. With reference to a First Amendment claim, Fifth Circuit has stated: "We should interfere only where there is a *clear case* of constitutional infringement." *Duke v. North Texas State University,* 469 F.2d 829, 838 (5th Cir.1973) (emphasis added). There is certainly no clear infringement here.

The standard which this court should follow in considering motions for Judgment Notwithstanding the Verdict is stated in *Boeing Company v. Shipman,* 411 F.2d 365 (5th Cir.1969). There the court stated: "If the facts and inferences point so strongly and overwhelmingly in favor of one party that *the Court believes* that reasonable men could not arrive at a contrary verdict, granting of the motions is proper." 411 F.2d at 374 (emphasis added). This *court believes* that reasonable men could not find that plaintiff's filing of the grievance with the Board was a substantial or motivating factor in Kirkpatrick's decision not to nominate her for part-time employment.[13] His decision was unquestionably motivated by plaintiff's strongly expressed position that she did not desire to job share and thought it unfair that it was even suggested. She acknowledged that she did not want to job share. It was obviously this position and not the filing of the grievance which caused Kirkpatrick to nominate Jones.

This court realizes that reasonable judges, like reasonable jurors, can disagree. See *Williams v. City of Valdosta,* 689 F.2d 964 (11th Cir.1982). In *Williams* action sim-

---

10. "The constitutional principle at stake is sufficiently vindicated if such an employee is placed in no worse a position than if he had not engaged in the conduct." *Mt. Healthy, supra,* 429 U.S. at 285–86, 97 S.Ct. at 575.

11. Such a reassessment is not available to plaintiff. *Fluker v. Alabama State Bd. of Education,* 441 F.2d 201, 207 (5th Cir.1971). The court does not find fault with any implicit jury finding that the original decision to prefer Jones was unfair to plaintiff. However, that is not the issue.

12. However, see *Stewart v. Bailey,* 556 F.2d 281 (5th Cir.), *rev'd on rehearing,* 561 F.2d 1195 (5th Cir.1977). The revision does not specifically reject the Court's discussion on page 284.

13. The jury more likely found that plaintiff should have been given preference over Jones in the initial decision to nominate Jones for the full time position.

ilar to that taken by this court was reversed. However, in *Williams* there was apparently substantial evidence of protected First Amendment activity *before* the employment decision was made. In this case there was no such evidence; only a claim glossed with a constitutional halo. The Motion for Judgment Notwithstanding the Verdict will be granted.

Defendants have also moved for the conditional grant of a new trial pursuant to Rule 50(c). The court has wide discretion on a motion for new trial and may consider the credibility of witnesses and the weight of the evidence. Wright & Miller, *Federal Practice & Procedure,* § 2531 at 575 (1970). It is clear that the verdict in this case was contrary to the clear and great weight of the evidence.

■ The court finds it to be against the great weight of the evidence and reasonable inferences therefrom that Kirkpatrick told plaintiff that she would job share or that plaintiff reacted as passively as she testified to Kirkpatrick's suggestion of job sharing. The great weight of the evidence was that she strongly evinced a rejection of the idea. Furthermore, although at the beginning of the trial the court directed the parties not to indicate acceptance or rejection of testimony by facial reactions, plaintiff continuously and without fail deliberately turned and obviously stared at the jury each time a witness gave testimony contrary to her own. When the testimony was consistent with her own, she looked at the witness. The clear and obvious purpose of this maneuver was to demonstrate disagreement. Although standing alone this would not be a determinative factor, it is a factor to be considered.

■ The court also finds the jury's award of punitive damages to be arbitrary and capricious and totally inconsistent with and unsupported by the evidence as it relates to the court's instructions. It is doubtful that the court would have submitted the question of punitive damages if the defendants had objected. For these reasons, the court

believes it proper to conditionally grant defendants a new trial should the court's grant of JNOV be overruled.

### Conclusion

The court's primary basis for granting the Motion for Judgment Notwithstanding the Verdict is that reasonable men could not find that Kirkpatrick's decision not to nominate plaintiff was based on her filing of a grievance with the Board. The decision not to nominate plaintiff was unquestionably made by Kirkpatrick immediately after plaintiff told him that she did not want to job share.[14]

It is totally and absolutely incredible (to the extent that reasonable and fair minded jurors could not find to the contrary) that the final decision of Kirkpatrick not to nominate plaintiff was motivated by her filing the grievance, or assuming *arguendo* that it was, that the same decision would not have been made notwithstanding the filing of the grievance.

The court's conditional grant of a Motion for New Trial is based on the fact that the verdict is against the great weight of the evidence for all the reasons discussed above.

### JUDGMENT

In accordance with a Memorandum Opinion entered contemporaneously herewith,

It is hereby ORDERED, ADJUDGED and DECREED that the verdict in favor of plaintiff be set aside and that this court's judgment thereon be vacated. It is further ORDERED that judgment be entered for defendants and plaintiff's complaint be DISMISSED, with prejudice.

It is further ORDERED that defendants' Motion for New Trial is GRANTED on grounds that the verdict is against the clear weight of the evidence. The court's ruling as to a new trial is to take effect only in the event that the court's grant of judgment notwithstanding the verdict in favor of defendants is reversed on appeal.

It is further ORDERED that the costs of this action shall be taxed against plaintiff.

14. Which is not necessarily the same as refusing to job share.

DONE and ORDERED this 5th day of November, 1982.