**John GIERINGER, Appellant,**

v.

**CENTER SCHOOL DISTRICT NO. 58 et al., Appellees.**

**No. 72-1535.**

United States Court of Appeals, Eighth Circuit.

Submitted Feb. 15, 1973.

Decided April 20, 1973.

Rehearing Denied May 23, 1973.

Irving Achtenberg, Kansas City, Mo., for appellant.

R. Lawrence Ward, Kansas City, Mo., for appellees.

Before LAY and BRIGHT, Circuit Judges, and NICHOL,* District Judge.

* Sitting by designation.

BRIGHT, Circuit Judge.

John Gieringer, in this civil rights action under 42 U.S.C. § 1983, seeks reinstatement to his teaching position in the appellee-school district and compensatory and punitive damages against members of the appellee-school board in their official and private capacities. The district court denied any relief, finding that Gieringer had not been dismissed for a constitutionally impermissible reason nor, since he was nontenured, denied procedural due process.[1]

On this appeal, Gieringer asserts that he was dismissed for the exercise of his right of free speech and that the findings of the trial court in support of its conclusion to the contrary were clearly erroneous. He further argues that the failure to provide him with notice of cause and a hearing on his dismissal denied him due process and equal protection guaranteed by the Fourteenth Amendment. Finally, he contends that the court erred in admitting a letter and certain testimony which were hearsay. We reverse the judgment, disposing of this case on First Amendment grounds.

The school board employed Gieringer for the 1969–1970 school year as an elementary physical education teacher assigned to classes in two schools in the district. During the 10 years prior to this assignment, Gieringer had served as a guidance counselor in the same school district. Over the latter portion of this 10-year period, friction had developed between Gieringer and his superiors as a result of several incidents. The school superintendent concluded from these incidents that Gieringer's attitude toward his superiors and fellow employees was insubordinate, rude, and abrasive. For these reasons, in the spring of 1969, the superintendent recommended that Gieringer's contract not be renewed. The school board rejected the recommendation but, as we have noted, transferred Gieringer to a different position at other schools in the district.

During the next school year, Gieringer appears to have gotten along well professionally with his superiors, receiving satisfactory or better ratings from the principals at both new schools. The sole exception to this apparent rapport arose out of an impromptu report delivered by Gieringer at a meeting of the Center Community Teachers Association in October, 1969. The subject of this report related to the school district's financial ability to raise teachers' salaries.

The district court related the following background to this incident:

The "out-of-class speech" contention arises out of a report plaintiff made at a meeting of the Center Community Teachers Association. The background of the incident is that a tract of federally owned land is located in the School District. Under Section 521 of Title 40, U.S.C.A., the agency occupying these premises was obliged to pay an amount equal to the local real estate taxes to the local authority. This Act expired in 1968. G.S.A., the Government agency, had withheld payments, however, for the years 1966–68, inclusive, on the ground that the assessed valuation was too high. The county brought suit to collect for these years. The law providing for such payments was not reenacted upon its expiration, and, although bills were introduced for that purpose, the School Board was informed throughout 1969 by the Congressman representing the district that passage appeared very doubtful.

Meanwhile, the teachers were seeking higher salaries for the 1969–70 school year. The Board submitted a larger tax levy to the voters to increase salaries, but it was defeated. In the fall of 1969 the County Counselor's office announced a settlement of the suit with G.S.A., which would result in a lump sum payment to the Board for the past three years of payments which had been withheld. The

---

1. The district court opinion has not been reported.

teachers immediately asked for a salary increase, and the Board refused on the grounds that this was a "one-shot" payment, and there would be no way to finance the increased salaries in the following years.

The plaintiff was delegated by an officer of the C.C.T.A. to investigate this contention of the Board and report to the Association.

The basis for Gieringer's report to the Teachers Association lay in his conversations with the county attorney regarding the settlement agreement, Gieringer's impression was that even if the necessary enabling legislation failed, an alternative source of funds might be found. The essence of the report, as preserved in the Association's minutes, was that "John Gerringer [sic] reported that due to a court case over disputed property that a substantial amount of money should come into the district this year and in the next few years." Based on Gieringer's report, the Teachers Association resolved to study and investigate the matter of teachers' salaries further.

The school superintendent, upon receiving word of Gieringer's report from a teacher who had attended the meeting, concluded that the report had been deliberately designed to undermine the credibility of the school administration in the eyes of the teachers. The incident was considered evidence that the history of difficulties between Gieringer and the administration would continue. The superintendent, therefore, in March, 1970, renewed his recommendation that Gieringer's contract not be renewed for the following school year. The school board this time voted unanimously to approve the superintendent's recommendation.

■ In support of this action, the appellees argue that Gieringer's dismissal rested upon the entire history of his inability to get along with his superiors rather than simply upon the report which he had made to the Teachers Association. The record serves to belie this argument. The school board's transfer of Gieringer in 1969 to different schools and a different position eliminated earlier frictions and cleared the air. Thereafter, the only criticism of Gieringer's performance as a teacher emanated from his report given to the Teachers Association. It is clear from the record that this report served as a catalyst and that without it no discharge would have occurred.[2]

Thus, the precise question before us narrows to whether the school board dismissed Gieringer for the exercise of his First Amendment right of free speech or, as the administration urges, because his report was in fact a deliberate misrepresentation or otherwise so insubordinate or provocative as to justify his dismissal. The district court deemed the report to be constitutionally unprotected:

> The plaintiff was not simply criticizing Board practices or policies, but was accusing them of deliberately withholding or misrepresenting important and material facts. Such a report would naturally cause serious dissension among the teachers, and similarly cause a lack of confidence in the Board by all taxpayers in the district. The facts, as represented by plaintiff, were completely untrue, as the most cursory investigation would show. The statements were irresponsible and obviously made to create consternation and dissension. The constitutional guaranty of free speech does not apply to statements such as these, and the Court finds this point against the plaintiff.

---

2. Even assuming Gieringer's report may have been only partially a factor in his dismissal, if that report was protected activity, then the dismissal was still constitutionally impermissible. Cook County Teachers Union, Local 1600, AFT v. Byrd, 456 F.2d 882, 888 (7th Cir.), cert. denied, 409 U.S. 848, 93 S.Ct. 56, 34 L.Ed.2d 90 (1972); Fluker v. Alabama State Bd. of Educ., 441 F.2d 201, 210 (5th Cir. 1971).

The controlling law is to be found in the Supreme Court's decision in Pickering v. Board of Education, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968). The teacher in *Pickering*, in a letter to a newspaper, publicly criticized the school board's allocation of funds between educational and athletic programs and the way in which the real reasons for seeking additional tax revenues had been glossed over by the board and superintendent. The board dismissed the teacher on the ground that his letter was deliberately false and misleading and therefore an unjustifiable attack upon the board and the school administration, disruptive of the operations of the school district. The dismissal was sustained by the state courts.

In reversing, the Supreme Court held (1) that a teacher retains the right as a citizen to comment on matters of public concern; (2) that to the degree such commentary is substantially accurate, it provides no grounds for dismissal absent a showing of disruption of the teacher's classroom duties or the regular operation of the school, and (3) that, even if the commentary is inaccurate, a showing of disruption is still required unless it can be proved that the statements in question were knowingly or recklessly made. The Court determined that Pickering's letter contained inaccuracies but that these were not knowing or reckless and that no disruptive effect had been shown.

■ Here, the settlement agreement was a matter of public concern. Nothing in the evidence suggests that Gieringer's report in any way interfered with his teaching. It does not appear to have jeopardized his relationship with fellow teachers with whom he had to work closely. It did not result in disruption of the district's operations. While the report evidenced optimism that the agreement might provide enough money to support a salary increase for teachers, it was couched in possibilities. There is no evidence that Gieringer deliberately sought to misrepresent his conversations with the county attorney in order to embarrass the administration. Gieringer's inference, from the background circumstances reported to him, that the school board would continue to receive federal monies was at least as permissible as the pessimistic pronouncements by the administration that any amount received from the federal government would represent only a "one shot" payment.[3]

In short, none of the indicia recounted in *Pickering*, which would take expression out of the sphere of protected activity, appear in this case. We, therefore, conclude that Gieringer's report was protected within the constitutional standards delineated in *Pickering* and hold that Gieringer was dismissed for a constitutionally impermissible reason.

■ The judgment of the district court is reversed. The case is remanded for the entry of judgment reinstating Gieringer and awarding him loss of backpay, subject to mitigation by Gieringer's earnings since his dismissal and without any award for punitive damages. Cooley v. Board of Educ., 453 F.2d 282, 287 (8th Cir. 1972); Ramsey v. Hopkins, 447 F.2d 128 (5th Cir. 1971).

3. Congress, in fact, did authorize continued in-lieu-of-tax payments for 1969 and 1970 pursuant to 40 U.S.C. § 523. The legislation, however, was repealed effective January 1, 1971. Pub.L. No. 91–466, § 2 (Oct. 17, 1970).