Dale **HIBBS**, Plaintiff,

v.

**BOARD OF EDUCATION OF IOWA CENTRAL COMMUNITY COLLEGE,** Individually and as Board members, et al., Defendants.

Civ. No. 73–C–2036–C.

United States District Court,
N. D. Iowa,
Central Division.

April 24, 1975.

Gordon E. Allen, Iowa Civil Liberties Union, Des Moines, Iowa, for plaintiff.

Herbert R. Bennett, Fort Dodge, Iowa, for defendants.

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER FOR JUDGMENT

HANSON, District Judge.

The plaintiff, a former instructor at Iowa Central Community College in Fort Dodge, Iowa, brought this action under 42 U.S.C. § 1983 (1970) alleging that his employment at that institution was terminated for constitutionally impermissible reasons. This Court has jurisdiction of the matter by virtue of 28 U.S.C. § 1343(3) (1970).

### FINDINGS OF FACT

1. On August 24, 1970, Dale Hibbs commenced employment as a Language Arts instructor at the Fort Dodge campus of the Iowa Central Community College, a two-year vocational-technical and academic institution organized under Chapter 280A of the Code of Iowa (1973).

2. Pursuant to state law, plaintiff's employment terms were defined by yearly contracts. Three such contracts were signed, governing the 1970–71, 1971–72 and 1972–73 school years.

3. Plaintiff was outspoken both in and out of the classroom during his years at the community college. He wrote several articles for the school paper expressing his views on the Indochina War and other contemporary issues, and utilized a "process teaching" method which was geared to "provoking thought" within the classroom.

4. During the 1972–73 school year, the Board of Directors of the college determined that decreasing enrollments would necessitate staff reductions for the 1973–74 term. The Arts and Science Division of the college was determined to be particularly affected by lowered enrollments. The Board of Directors instructed the school administration to study staff needs for the upcoming term, in accordance with the following plan:

### APPROVED METHOD OF STAFF REDUCTION

It has been determined by the Board of Directors of Iowa Central Community College that the following points shall be followed in making staff reductions for the 1973–1974 year necessitated by changes in enrollments between divisions and centers:

1. Determine those staff members not planning to return for the 1973–1974 year.

2. Determine those staff members planning to retire at the close of the 1972–1973 year.

3. Determine those past retirement age as of employment time for 1972–1973 and work from that list in the departments that are over-staffed.

4. Determine those last added to the staff in those departments where over-staffing exists.

5. Determine the areas within the department where over-staffing exists and determine the value of each instructor to the department and to the college.

5. A committee of seven faculty members participated in the initial decision-making process regarding the plaintiff's situation under the proposed reduction scheme. Making up the committee were Louis Newsham, Director of Arts & Science; Dr. Carl Larson, Administrative Assistant for Curriculum and Instruction; William McKnight, Registrar; W. Richard Hammans, Director of Vocational Technical Association; Kenneth Waterman, Department Head of English; and Dr. Henry Witt, Administrative Assistant for Student Services. This same committee regularly interviewed prospective faculty employees, and made recommendations concerning their employment.

6. In regard to the language arts department, the committee decided upon the following "order of reduction" pursuant to the approved reduction method: Mrs. Barbara Byrne, first; Mr. Dale Hibbs, second.

7. Mrs. Byrne's status as the "first to go" was made on a seniority basis. As to the plaintiff, he commenced duties on the same date as another teacher in the language arts department, Philip Lack. To determine a reduction preference between the two equally-senior instructors, the committee devised the following:

Criteria for selecting teachers for retrenchment.

1. Which of the two teachers exhibits the best judgment and tact in selection of curriculum materials that are relevant to the teaching assignment.

2. Which of the two teachers demonstrates the best (sic) judicious use of class time for achieving class objectives.

3. Which of the two teachers makes the greatest contribution towards the improvement of instruction. This would be apparent amount of time the instructor spends towards making a positive contribution towards the improvement of instructions.

4. Which of the two teachers demonstrates the greatest amount of allegiance towards helping the institution reach its goals. This would be in terms of a positive attitude of pulling students, teachers and administrators together towards the goals of this college.

5. Which of the two teachers seems to best demonstrate a teaching position that agrees with the purposes and functions of a community college.

6. Which of the two teachers demonstrates the greatest amount of overall loyalty to the institution.

7. In summary ----- Which of the two teachers makes the greatest positive contribution to the college.

Each of the committee members was asked to make a value judgment in terms of indicating which of the two teachers rated highest or could best serve the institution by remaining with the college.

(Plaintiff's Exhibit 7)

Through application of these criteria, it was determined that Mr. Hibbs would be dismissed, rather than Mr. Lack.

8. On January 10, 1973, Dr. Edwin Barbour, college superintendent, advised ten faculty members of the "distinct possibility" that they would be affected by the staff reduction. Plaintiff was one of the ten individuals so advised.

9. On February 7, 1973, the teachers affected for staff reduction in the Arts & Science Division were notified in writing that the enrollment projections previously determined had not been changed. On February 15, 1973, the Board of Directors directed the Secretary to issue the required notice of consideration of termination of teachers continuing contract to the designated faculty members, including the plaintiff. On March 13, 1973, private hearings requested by individual faculty members affected by the termination were held. Following the hearings, the Board requested that additional study be made and additional information be prepared to be presented to the Board at a special meeting on Tuesday, March 27, 1973. On March 27, 1973, a meeting was held at which additional information was presented to the Board. Following the presentation, the Board approved the sending of a final notice of termination to the involved staff members, including the plaintiff. The plaintiff requested a public hearing and the same was set on Tuesday, May 22, 1973, and was held. After the hearing the Board voted by roll call to terminate the plaintiff's employment by 7 to 2 vote.

10. On July 6, 1973, plaintiff instituted this action. The case was tried to the Court on February 18, 1975.

## CONCLUSIONS OF LAW

Plaintiff's § 1983 complaint seeks damages, declaratory and injunctive relief as a result of the action of the committee and Board. Plaintiff alleges that the defendants erred in computing his seniority, thus rendering his termination unlawful. He asserts that the provisions of § 279.13 of the Code of Iowa (1973), which govern the hearing procedures applicable to teacher non-renewal situations, are unconstitutional both on their face and as applied in the instant case. Lastly, plaintiff asserts that the decision not to rehire him was constitutionally impermissible, in that the decision-makers acted in retaliation for his exercise of First Amendment rights, both in and out of the classroom.

Based on the submission of this cause, the Court deems that the First Amendment argument is plaintiff's primary contention. The Fourteenth Amendment claims were not vigorously pressed upon the Court, and can be disposed of rather briefly.

■ Considering the seniority issue, the record reveals that the college computes seniority from the day a teacher's contractual duties first commence. Because plaintiff and Mr. Lack both began teaching at the start of the 1970 school term, their seniority was considered to be equal. Plaintiff's assertion that he was more "senior" than Lack because he signed his contract a few weeks earlier was rejected by the school, and the Court deems the college's seniority computation method to be a reasonable one. Under these circumstances, no denial of a constitutional right was occasioned by the administration's determination of seniority.

■ Plaintiff's procedural due process arguments are equally unavailing. Plaintiff taught in an area community college established under Chapter 280A of the Iowa Code. Section 280A.23(4) of that chapter incorporates the provisions of Chapter 279 of the Code in defining the authority of the board of directors of the area schools. Iowa has no teacher tenure law, but does provide a series of procedural guidelines via § 279.13 which governs the termination of teachers' contracts.

In a stipulation filed with this Court on November 27, 1974, the parties agreed that the notice and hearing prescriptions of § 279.13 were adhered to in this case. (Item 6 of Stipulation). In Swab v. Cedar Rapids Community School District, 494 F.2d 353 (8th Cir. 1974), the Eighth Circuit Court of Appeals held that the statutorily-provided notice and hearing opportunities of § 279.13 satisfied the Fourteenth Amendment due process rights of the teacher-plaintiff in that case. Because the statute was similarly followed here, the same result is mandated; no denial of procedural due process exists.

■ Plaintiff also asserts that the decision not to rehire him was in contravention of the due process clause since the decision-makers on the committee and on the Board of Directors were biased against him. As was the case in Swab, no "personal bias" on the part of any of the participants has been shown here. The fact that the members of the decision-making bodies were familiar with the plaintiff is simply a result of having persons who are familiar with the college participating in decisions which vitally affect it. See id. at 354–55. The proof in this case simply does not support an allegation of bias against the committee or Board.

Plaintiff's First Amendment arguments raise more substantial questions. The evidence produced at trial clearly revealed that plaintiff vigorously exercised his right of free speech while at Iowa Central Community College. Through his testimony, plaintiff described his participation in four "controversial" events; in each situation he asserts that he was pursuing his First Amendment

rights. Plaintiff contends that the result of this pursuit was his dismissal.

■■■ The Eighth Circuit Court of Appeals has recently enunciated the principles which govern situations such as the instant case. In Watts v. Board of Curators, 495 F.2d 384 (8th Cir. 1974) that court stated:

It is now almost axiomatic that teachers do not shed their constitutional rights to freedom of speech or expression at the schoolhouse gate. Tinker v. Des Moines Independent Community School District, 393 U.S. 503, 506, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969). Accordingly, a state may not deny a valuable governmental benefit "to a person on a basis that infringes his constitutionally protected interests—especially, his interest in freedom of speech." Perry v. Sindermann, 408 U.S. 593, 597, 92 S.Ct. 2694, 2697, 33 L.Ed.2d 570 (1972). Yet, a state has a legitimate interest in the fitness and competence of its teachers. Shelton v. Tucker, 364 U.S. 479, 485, 81 S.Ct. 247, 5 L.Ed.2d 231 (1960). There is no requirement in the constitution that a teacher's classroom conduct be the sole basis for determining his fitness. Fitness for teaching depends on a broad range of factors. Beilan v. Board of Education, 357 U.S. 399, 406, 78 S.Ct. 1317, 2 L.Ed.2d 1414 (1958). A college has a right to expect a teacher to follow instructions and to work cooperatively and harmoniously with the administration. *It is the burden of the teacher to show that the decision not to renew a contract was in fact a pretext, and that the decision was actually based on the Board's disapproval of the exercise of a constitutionally protected right by the teacher.* Cf. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 803-04, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *Id.* at 389.

See also Buhr v. Buffalo Public School District No. 38, 509 F.2d 1196, 1203 n. 8 (8th Cir. 1974). It is this Court's conclusion that the plaintiff has failed to show that the college's decision not to rehire him was impermissibly based upon his exercise of First Amendment rights.

The crucial aspect of this finding is a fact which both parties concede: At the time the decision to dismiss the plaintiff was made, a legitimate need existed to reduce the size of the faculty at Iowa Central Community College.[1] This fact alone distinguishes this law suit from First Amendment cases where the dismissal is plainly precipitated by the constitutionally protected behavior. See, e. g., Mailloux v. Kiley, 323 F.Supp. 1387 (D.Mass.1971); Gieringer v. Center School District No. 58, 477 F.2d 1164 (8th Cir. 1973). ("It is clear from the record that [a First Amendment protected report] served as a catalyst and that without it no discharge would have occurred.") *Id.* at 1166. The *Gieringer* case left open the possibility however, that relief could be afforded to a dismissed teacher where First Amendment protected activities "only partially" affect the dismissal. *Id.* at 1166 n. 2. Given the facts of this case, the *Gieringer* court's statement does not render the school's actions impermissible.

At trial plaintiff sought to show that his speech-related activities in four different matters prompted his dismissal. Plaintiff contributed regularly to the student newspaper, and often for the purpose of "provoking thought." He aired his views on two "controversial" subjects, once by speaking at a rally regarding the bombing of Cambodia, and once by taping a radio speech dealing with bomb tests on Amchitka Island. Finally, he devised a "questionable" language exercise for a class of machine shop and mechanical drafting students. The exercise involved the distribution of a worksheet which listed five sentences written in "street language." The students were to translate

---

[1]. The legitimacy of the need to retrench is underscored by the fact that plaintiff's department (language arts) has been reduced from 21 to 12 faculty members since 1972.

the slang statements into sentences which would be acceptable in a day-to-day business context. Plaintiff asserts that he was exercising his rights of free expression in all four situations, and that this exercise prompted his dismissal.

As previously noted, the need to reduce the size of the college's faculty was not a "pretext." A financial problem definitely existed at the school, and a number of faculty members other than the plaintiff were dismissed. Further, the evidence as presented to this Court did not establish the existence of any discernible motivation on the part of the administration to dismiss the plaintiff for his speech. While some of his actions did provoke comment from his superiors at the time, his activities were not administratively curtailed. Moreover, the overwhelming thrust of the evidence was that if it were not for the retrenchment situation, plaintiff would still be teaching at Iowa Central Community College. Even when the issue of retrenchment came up, plaintiff was not the first to be discharged. Within his own department, Mrs. Byrne was scheduled to go first. Indeed, the five-step "approved method of staff reduction" was devised for all departments, not just the plaintiff's. In plaintiff's case, however, his department had to make a decision between two individuals who were equal in seniority.

The decision of the committee and Board that plaintiff should be dismissed ahead of Mr. Lack reflected the combined efforts of fifteen individuals

much more familiar with the needs of Iowa Central Community College than this Court is. The decision-makers concluded that the school would be "better off" with Mr. Lack than Mr. Hibbs, and so voted.[2] In effect, plaintiff is asking this Court to substitute its opinion for that of the School Board. As the Supreme Court has recently noted, this Court's role is not to second-guess school administrators; it is to determine whether plaintiff's constitutional rights have been transgressed.[3]

It cannot be denied that the decision-makers were aware of plaintiff's First Amendment protected activities, and that they discussed them in reaching their decision. The committee also discussed other matters pertinent to the two teachers which were not so "controversial"—such as their preference of Mr. Lack to Mr. Hibbs as a teacher of vocational-technical students. The sum and substance of the evidence is that while the committee and Board considered both teachers to be well qualified, they liked Mr. Lack better than Mr. Hibbs, and one of the two teachers had to go. The question boils down to whether the administrative decision should stand, given the fact that some of plaintiff's activities which the decision-makers considered relevant were First Amendment protected. This question must be considered in light of the fact that a decision *had* to be made to reduce the size of the department.

Iowa law prescribes that the final decision on teacher retention in public schools is to be made by local school

---

2. The vote was 6–0 in the committee, and 7–2 by the Board.

3. The Supreme Court made the following comments in Wood v. Strickland, —— U.S. ——, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975), a recent students' rights case:

[Section] 1983 does not extend the right to relitigate in federal court evidentiary questions arising in school disciplinary proceedings or the proper construction of school regulations. The system of public education that has evolved in this Nation relies necessarily upon the discretion and judg-

ment of school administrators and school board members and § 1983 was not intended to be a vehicle for federal court correction of errors in the exercise of that discretion which do not rise to the level of violations of specific constitutional guarantees. See Epperson v. Arkansas, 393 U.S. 97, 104 [89 S.Ct. 266, 270, 21 L.Ed.2d 228] (1968) ; Tinker, supra, 393 U.S. at 507 [89 S.Ct. at 736]. *Id.* at ——, 95 S.Ct. at 1003.

See also Frazier v. Curators of University of Missouri, 495 F.2d 1149, 1153 (8th Cir. 1974).

board. § 279.13, Code of Iowa (1973). The arguments advanced by plaintiff to this Court would greatly curtail the discretion of these elected bodies. If plaintiff were to prevail, a future Board faced with a comparable retrenchment situation would be forced to retain those teachers who most actively assert their First Amendment rights, or face a lawsuit. But as plaintiff argues, free expression extends to activities both in and out of the classroom. It extends to conduct, as well as speech. *Cf.* Tinker v. Des Moines Independent Comm. School District, 393 U.S. 503, 89 S.Ct. 733, 21 L.Ed.2d 733 (1969). Given this premise, it is obvious that Mr. Lack has First Amendment rights, too. If these rights are allowed to permeate his teaching behavior to the extent that a decision based on almost anything he does is impermissible, the ability of school administrators to make decisions is eviscerated. The only alternative in a situation such as this (where one teacher "has to go") would be a system such as a lottery. While such a system would be simple to administer, it too could be subject to legal attack.[4]

In this case, the defendants, who for the most part had extensive educational experience, exercised their discretion in deciding to retain Mr. Lack in preference to plaintiff. The initial impetus for making their decision was a financial reason existing independently of plaintiff's penchant for free expression. In evaluating the plaintiff, certain instances of his free expression were openly discussed. Given the facts of this case, however, defendants' decision not to rehire plaintiff was a permissible exercise of administrative discretion. Under these conditions, plaintiff's First Amendment rights have not been violated.

For the above reasons, it is ordered that plaintiff's complaint is hereby dismissed.

It is further ordered that the foregoing shall constitute the Findings of Fact, Conclusions of Law, and Order for Judgment in this case, in accordance with Rule 52(a) of the Federal Rules of Civil Procedure.

---

4. Such a system conceivably could run afoul of a teacher's right to substantive due process.

   That doctrine was described as follows in another teacher dismissal case, Buhr v. Buffalo Public School District No. 38, 509 F.2d 1196 (8th Cir. 1974):

   "The claim that a person is entitled to 'substantive due process' means . . .

that state action which deprives him of life, liberty, or property must have a rational basis—that is to say, the reason for the deprivation may not be so inadequate that the judiciary will characterize it as 'arbitrary.'" *Jeffries v. Turkey Run Consolidated School District,* 492 F.2d 1, 3-4 (7th Cir. 1974). *Id.* at 1200.