Terry SHEETS, Plaintiff,

v.

STANLEY COMMUNITY SCHOOL DISTRICT NO. 2, a Public Corporation, et al., Defendants.

No. A4–74–40.

United States District Court, D. North Dakota.

May 23, 1975.

Daniel J. Chapman, Bismarck, N. D., for plaintiff.

Walfrid B. Hankla, Minot, N. D., Q. R. Schulte, Stanley, N. D., for defendants.

## MEMORANDUM AND ORDER

VAN SICKLE, District Judge.

This action was brought by Terry Sheets against Stanley Community School District No. 2 and the members of the School Board, individually and as members of the School Board.

Jurisdiction is premised on 42 U.S.C. § 1983, which provides that any person acting under color of state law who causes a party to be deprived of any rights, privileges or immunities secured by the Constitution shall be liable to the injured party in a proper proceeding for redress; and on 42 U.S.C. § 1988, which provides that the district court having jurisdiction shall have the authority to tailor its orders to remedy the situation which resulted in the violation.

■ This Court has jurisdiction under 42 U.S.C. § 1983 for alleged violations of Plaintiff's First and Fourteenth Amendment rights pursuant to 28 U.S.C. § 1343. The Defendant school district contends that it is not a "person" subject to suit under 42 U.S.C. § 1983 and thus that jurisdiction cannot be sustained under 28 U.S.C. § 1343 as to the claim against it. Although there are Eighth Circuit opinions which support this contention, notably *Strickland v. Inlow*, 485 F.2d 186, 191 (8th Cir. 1973), vacated and remanded on other grounds sub nom. *Wood v. Strickland*, 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214, 43 U.S.L.W. 4293 (1975), the most recent Eighth Circuit opinion on the question has found "school districts to be within the meaning of 'persons' for the purposes of § 1983." *Keckeisen v. Independent School District 612*, 509 F.2d 1062, 1065 (8th Cir. 1975). Furthermore, even if the Defendant school district is not a "person" under § 1983 and jurisdiction cannot be sustained under 28 U.S.C. § 1343, jurisdiction can still be sustained under 28 U.S.C. § 1331 for the implied cause of action in the alleged violation of Plaintiff's First and Fourteenth Amendment rights, since the amount in controversy is in excess of $10,000.00. See *Bivens v. Six Unknown Named Agents*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971); *Bell v. Hood*, 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939 (1946); and *City of Kenosha v. Bruno*, 412 U.S. 507, 516, 93 S.Ct. 2222, 37 L.Ed.2d 109 (1973), (Brennan, J., concurring).

The initial complaint claimed violations of the Plaintiff's First, Fifth, Ninth and Fourteenth Amendment rights. The memorandum in support of the Plaintiff's request for a temporary restraining order theorized that the Plaintiff teacher's annual contract was not renewed because he had criticized the School Board at a public meeting held in Stanley. Plaintiff claimed that

the case was on all fours with *Gieringer v. Center School District No. 58*, 477 F.2d 1164 (8th Cir.), cert. denied, 414 U.S. 832, 94 S.Ct. 165, 38 L.Ed.2d 66 (1973).

After five trial days, Plaintiff amended his pleadings as follows:

Original Complaint, Paragraph X:

"That Plaintiff raised these criticisms at a public meeting of school district patrons."

Amended Complaint, Paragraph X:

"That Plaintiff voiced these criticisms, among other places, at a public meeting of school district patrons, and further voiced criticisms in a legitimate manner at meetings of the Stanley Education Association, a professional organization of teachers, and in the lounge and other legitimate places within the school, all without interference with the principal business of the school, to wit, the education of the students."

Thus, in his pleadings the Plaintiff did not abandon his original theory, but by amendment broadened his basis for claim of relief.

The evidence developed that Mr. Sheets was employed as the instrumental music director of the Stanley school system in the school year 1970–71. His wife, Leona, was also employed as a special education teacher. At the time of his employment Mr. Sheets had completed his service with the United States Air Force and had gone back to summer school for a refresher course on his teaching degree with a major in vocal music. He took his refresher work in instrumental music. He informed the school board at the time of his employment that he would complete that refresher work, and did so.

The Stanley School Teacher Handbook advises teachers that they are required to take periodic additional training for maintenance of proficiency. Mr. Sheets did that, originally in music, but later in administration, in which he received his Master's Degree about 1973–74.

Mr. Sheets' original relationships with the then School Board were mutually satisfactory. In 1971–72, he was Chairman of the N.D.E.A. Negotiation Committee. And, while not an officer in the local S.E.A., he did remain part of the negotiating group. He incurred the wrath of some of his fellow teachers, due to the fact that, although the local teachers group had directed their negotiators not to push for mandatory retirement of older teachers, he was credited with attempting to introduce it into the negotiations. He resisted efforts by some of his fellow teachers to require the exclusion from classes of pregnant school girls. He resisted a ruling by the School Board, made at the request of certain members of the faculty, that a hyperactive patron be required to limit her monitoring of classes. While his attitudes on these matters were eminently reasonable, for some reason or reasons hidden in his personality, he generated strong and lasting enmities among his fellow teachers. Gradually, trouble developed within the staff to the point that at the beginning of the 1973–74 school year, the President of the School Board, at a pre-school faculty meeting, exhorted the faculty to settle into its task. In his words:

"We hadn't had too good a year the year before and I felt the School Board would not tolerate another year like it."

Soon after April 15, 1973 (the final date for issuance of notice of nonrenewal for the school year 1973–74, N.D.C.C. § 15–47–27), Mr. Sheets' troubles with the School Board began to crystallize. He undertook to organize a band trip to Yorkton, Saskatchewan. The School Board and the school administration, rightly or wrongly, felt that he committed the school to the trip before the board and administration had a chance to evaluate the problems it could or would generate.

In December of 1973 and January of 1974, Mr. Sheets' Principal, Mr. Jorgenson, complained to the board that Mr. Sheets refused to file lesson plans. This matter was returned to Mr. Jorgenson for solution, but it again became an issue when a substitute teacher, a Mrs. Schulte, complained to a board member, Mrs. Rasch, that her sub-

stitute teaching was hampered by an absence of lesson plans.

Early in February, 1974, Mr. Sheets, after informing the administrators that he would not be present to lead the school band at two school athletic functions, was ordered by the board to be present. He undertook to persuade the board members to change their ruling by discussing the problem with the individual members, and only caused the members to accuse him of inaccurately reporting their statements so as to exert improper influence by one board member on another.

In February of 1974, the board members met with the school administrators for teacher evaluation conferences. At that time, and with reference to Mr. Sheets, Mrs. Rasch, a board member, inquired if refusal to file lesson plans, as required by school policy, was not sufficient cause for nonrenewal of Sheets' contract.

Meanwhile, the morale situation in the school had deteriorated to the point that community intervention developed. The School Board undertook on February 28, 1974, to visit separately with each member of the faculty in order to discover, and if possible to correct, the strife within the system. Comments by the teachers in these individual meetings demonstrated that Mr. Sheets was a focal point of enmity among members of the faculty and the administration. (These meetings also brought out other problems.)

On March 7, 1974, a Mrs. Lovdahl, a patron of the district, set up a public community meeting in the Stanley Memorial Building, where the public were requested to meet and discuss the community school problems. At least one member of the board was invited to attend, but no member did attend. Instead, the community was invited to attend the March 12th meeting of the board.

At the community meeting, Mr. Sheets and others expressed their positions and opinions to whatever length they desired. Mr. Sheets in particular discussed the fact that the North Central School Evaluation of Stanley schools, done in 1973, had made specific recommendations which he felt had not been acted upon with sufficient dispatch by the members of the board and the administration. (The precise nature of these recommendations did not come out in the trial, but the fact that some or all of them involved costs did come out.)

This meeting of March 7, 1974, is the meeting upon which both Mr. Sheets and Mr. Dunn based their conclusion that Mr. Sheets was not being renewed for constitutionally impermissible reasons. But after five days of trial, it was clear that Mr. Sheets' statements at the public meeting of March 7, 1974, had very little impact on the members of the School Board and were not an element in the decision of the School Board not to reemploy him.

On cross-examination the board members disclosed:

Peter Enns: Seventh year on the Board. Lives in Stanley. Was out of town on March 7, 1974. He had no idea what was said at the public meeting. "Things moved so fast that I never found out." As Chairman of the Board he did not vote on Sheets' nonrenewal.

Donald Aune: Ninth year on the Board. Lives seventeen miles northwest of Stanley. He was not present at the community meeting of March 7, 1974. A patron told him about it and did not report that Mr. Sheets was critical of the Board.

Virginia Dobrovolny: Three years on the Board. Lives south of Stanley. She knew the March 7th meeting took place. She was invited to attend. There was no discussion among the Board members not to attend. Her husband was in town and did attend. Her husband dismissed the meeting as "ridiculous." She learned Mr. Kline had talked about taxes. Only recalled remark by Mr. Sheets was that "you can dismiss a teacher for the color of his shirt." This was repeated to her because it was quotable.

Esther Rasch: Two years on the Board. Lives in Stanley. She testified she placed no reliance on the public meeting. She did not attend the public meeting. It was she who had wondered in February of 1974 if

Mr. Sheets' refusal to file lesson plans was not so serious as to warrant nonrenewal of his contract.

But the whole approach of Mr. Dunn, the N.D.E.A. representative who discussed Mr. Sheets' contemplated nonrenewal with a few board members and the Superintendent on the afternoon of April 4, 1974, and appeared for Mr. Sheets at the board meeting of April 4th, and again at the continuation of that meeting on April 11th (Exhibit 5), and the original theory of the case, were both premised on Plaintiff's assumption that the community meeting of March 7, 1974, was the key to his nonrenewal.

Tuesday, March 12, 1974, was the night of the regular school board meeting. Approximately 100 patrons appeared and voiced their concerns about the community school problems, including the tax load being imposed by the schools. After the patrons had appeared and expressed their concern, the School Board completed its regular business.

At the March 12, 1974, meeting Mr. Draffehn, Superintendent of Schools, reminded the School Board that it was held to the statutory schedule of N.D.C.C. § 15–47–27 and the fair play provisions of N.D.C.C. § 15–47–38, which construed together required that they give notice of contemplation of nonrenewal at least by April 1st, and disclose a final decision after a hearing, but by April 15, 1974.

During the rest of the month, as any of the School Board members met at the school or in town, a recurring topic was whether anyone should be considered for nonrenewal.

On March 29, 1974, at a special school board meeting, notices of contemplated nonrenewal of teacher contracts were sent to Terry Sheets, to his wife, Leona Sheets, and to Mr. Garbel, a commerce teacher. These notices informed the recipients that the board would meet April 4, 1974, to consider the contemplated nonrenewal.

Mr. Sheets notified the N.D.E.A. of his letter. He conferred with the representative at Minot, and on the afternoon of April

4, 1974, with Mr. Dunn, Executive Director of the N.D.E.A.; and, while he discussed with Mr. Dunn that he had refused to file lesson plans, had trouble about a refusal (which he later reversed) to lead his bands at a school function (see minutes of meeting of February 12, 1974), he and Mr. Dunn concluded that the real reason for the board's considering his nonrenewal was his participation in the public meeting of March 7, 1974. This conclusion was in part due to the fact that Mr. Draffehn, the Superintendent, and Mr. Jorgenson, the Principal, had both expressed their displeasure to him about his part in the public meeting. On the afternoon of April 4, 1974, Mr. Dunn went to the office of the Superintendent of Schools and there had a discussion with Mr. Draffehn and Mr. Enns. In the course of that discussion, Mrs. Rasch came in. She testified, "The first thing he said was, 'We have a lawsuit.' We hadn't even had a hearing!"

■ On the evening of April 4th, the hearing to consider the nonrenewal of the three teachers was had. At the outset Mr. Draffehn read the statement of the board's reasons for consideration (Exhibit 2). [In reviewing the language of Exhibit 2 and Exhibit 3, it must be kept in mind that, in circumstances of contemplated nonrenewal under N.D.C.C. § 15–47–38, there is no requirement that the teacher be given a statement of reasons for contemplated nonrenewal before hearing on nonrenewal. The nontenured teacher has no property interest in continued employment nor is he deprived of liberty by nonrenewal. *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); *Hennessy v. Grand Forks School District # 1*, 206 N.W.2d 876 (N.D.1973); *Buhr v. Buffalo Public School District No. 38*, 509 F.2d 1196, 1202 (8th Cir. 1974). In fact, Plaintiff conceded in open court that he had no claim based on violation of procedural due process.] Mr. Draffehn had prepared Exhibit 2 as a preliminary expression of the Board's reasons for nonrenewal. At that point Mr. Dunn took over the meeting. He rejected those portions of the statement which referred to other matters:

"Considerable dissent among the teaching staff," which referred to the rift that had developed between Mr. Sheets and certain members of the faculty, arising in part, at least, from his failure to represent the staff's expressed desires as to early retirement.

"Take school problems to the community," which referred to his efforts, through the students, to get the Board to approve his Yorkton trip.

"Turn in lesson plans."

"Refusal to chaperone a junior high school party," which involved his acceptance of that responsibility and then apparent withdrawal of that acceptance.

Mr. Dunn disregarded all matters as immaterial except "taking problems to the community." He suggested that the School Board meant by that Mr. Sheets' participation in the March 7th community meeting. Mr. Dunn again clearly threatened the School Board with litigation should it elect to nonrenew Mr. Sheets' contract.

Then Mr. Dunn requested a recess until April 11th to allow him to prepare further resistance. This recess was granted by the Board.

On April 9, 1974, the Board had its regular April School Board meeting. Prior to that meeting, in the afternoon, the board members went as a group to Minot, North Dakota, to consult with Mr. Hankla, a lawyer known to be versed in school matters, in view of Mr. Dunn's threat.

Mr. Hankla informed the Board that Mr. Dunn was correct; that the Board was free to nonrenew Mr. Sheets' contract, even without cause, if it was done in good faith; but that if a constitutionally impermissible reason, such as reaction to his exercise of his right of freedom of speech, was a factor, then any decision to nonrenew would be void. Mr. Hankla told the Board, according to Mr. Aune:

"When you sit down to make up your mind as to Mr. Sheets, you cannot consider public statements by Mr. Sheets at a public meeting."

With that knowledge, the Board returned to Stanley and to the meeting scheduled for April 11, 1974.

As a first step, it directed Mr. Draffehn to redraft the statement of reasons for contemplated nonrenewal so as to make clear that Mr. Sheets' conduct outside the school would not be a factor in the Board's decision. But the redraft (Exhibit 3) did contain the elements which had loomed in the Board's thinking from the beginning. They were:

1. The problem of bypassing the administrative officers and the Board by utilizing the children in school (the Yorkton trip incident).

2. Refusal to submit lesson plans.

3. Failure to follow proper channels. This referred to the incident involving his wish to be absent when his bands were playing and also to the incident where he attempted to play the board members against one another in order to get them to reverse a decision.

The redraft (Exhibit 3) is inartfully phrased. Grammatically, it suggests that Sheets' "failure to submit lesson plans" and his "lack of cooperation in following proper channels" have "caused disharmony, hard feelings, and dissension among the teaching staff and . . . upset the learning situation in the school." The Board did not intend this.

Again, on April 11th, Mr. Dunn appeared and delivered his statement (Exhibit 5); and after the three teachers involved in the nonrenewal proceedings had been heard, the Board considered each matter separately, ruling separately on each.

Mr. Sheets was not renewed.

Mrs. Sheets was renewed.

Mr. Garbel was renewed.

Mr. Sheets then, without a break in his employment, took an administrative position at Belcourt, North Dakota, which paid him $12,000.00 per year, as against his prior $10,000.00 per year when he taught in Stanley.

Mrs. Sheets elected to resign, and she also took a teaching position at Belcourt, North Dakota, which paid her $11,500.00, as against the $7,000.00 per year she had received in Stanley.

It is worthwhile to note that the conclusion reached by Mr. Dunn and Mr. Sheets before they had heard from members of the Board—i. e., the conclusion that complaints other than Mr. Sheets' expressions of opinions were not important and not sufficient to trigger Board action—was never revised by Mr. Sheets or Mr. Dunn. In fact, as pointed out by Mr. Enns, the only reason that the "freedom of speech" issue was the principal topic at the April 4th meeting and the April 11th meeting was that Mr. Dunn did most of the talking.

In answer to the Plaintiff's argument that the Board's decision was determined by the attitude of the administrators, one need only reflect that Mr. Dunn is the executive officer of the N.D.E.A., a man of considerable prestige in school circles; that, by his own admission, he delivered, both times, forcible and lengthy arguments; and that because of his arguments the board en masse sought out expert legal advice before proceeding with its administrative duties.

Plaintiff argues that, Mr. Dunn having dramatized the issue of freedom of speech, the Board could not then act without reference to it. To accept that argument would be to hold that any governing body could be hamstrung simply by exposing it to a "freedom of speech" argument.

■ I find that the Plaintiff does not meet his burden of proving that the Board's action was based on a constitutionally impermissible reason simply by proof that the Board was warned against using a constitutionally impermissible reason. The repeated incantation of the constitutional right to freedom of speech by one opposing school board action, cannot be permitted to paralyze the Board from performance of its administrative duties.

The amendment to the complaint, however, raises a further question. Plaintiff has shifted his position and now asserts that, so long as his disruptive conduct within the school incorporated within it expressions of opinion, that conduct is constitutionally protected. The Eighth Circuit met that problem in a more extreme circumstance in *Birdwell v. Hazelwood School District*, 491 F.2d 490 (8th Cir. 1974), and rejected Plaintiff's position.

Plaintiff's argument brings us to the concern expressed in *Wood v. Strickland*, 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214, 43 U.S.L.W. 4293 (1975), that public school officials undertake action in good faith fulfillment of their responsibilities and within the bounds of reason under all the circumstances, and exercise their discretion without undue timidity. Id., 420 U.S. at 321, 95 S.Ct. at 1000, 43 L.Ed.2d at 224, at 4298.

■ We must recognize that our system of public education necessarily relies "upon the discretion and judgment of school administrators and school board members and § 1983 was not intended to be a vehicle for federal court correction of errors in the exercise of that discretion which do not rise to the level of violations of specific constitutional guarantees." Id., 420 U.S. at 326, 95 S.Ct. at 1003, 43 L.Ed.2d at 227, at 4299. "It is settled doctrine . . . that a nontenured instructor may be dismissed provided the dismissal is not in fact based upon some constitutionally impermissible ground, such as . . . retaliation for assertion of rights guaranteed by . . . the Constitution." *Frazier v. Curators of University of Missouri*, 495 F.2d 1149, 1153 (8th Cir. 1974). See also *Buhr v. Buffalo Public School District*, supra, 509 F.2d at 1201, n. 4, and cases cited therein. If the decision to nonrenew a teacher's contract is based even partially on a constitutionally impermissible ground, the decision cannot stand, *Gieringer v. Center School District No. 58*, supra, 477 F.2d at 1166, n. 2, unless the constitutionally impermissible ground is merely incidental. *Watts v. Board of Curators*, 495 F.2d 384, 388–89 (8th Cir. 1974).

The principal Supreme Court case on the issue of a teacher's constitutional right to freedom of expression is *Pickering v. Board of Education*, 391 U.S. 563, 88 S.Ct. 1731, 20

L.Ed.2d 811 (1968). In *Gieringer v. Center School District No. 58*, supra, the Eighth Circuit summarized the holding of *Pickering* as follows:

"(1) that a teacher retains the right as a citizen to comment on matters of public concern;

(2) that to the degree such commentary is substantially accurate, it provides no grounds for dismissal absent a showing of disruption of the teacher's classroom duties or the regular operation of the school, and

(3) that, even if the commentary is inaccurate, a showing of disruption is still required unless it can be proved that the statements in question were knowingly or recklessly made." Id., 477 F.2d at 1167.

The burden is initially on the teacher to show that the decision to nonrenew him "was actually based on the Board's disapproval of the exercise of a constitutionally protected right . . ." *Watts v. Board of Curators*, supra, 495 F.2d at 389. See also *Frazier v. Curators of University of Missouri*, supra, 495 F.2d at 1153. In a case of contract cancellation, once a teacher has shown that his nonrenewal was based on his commenting on matters of public concern, the burden then shifts to the school authorities to show that the teacher's comments resulted in a disruption of his classroom duties or the regular operation of the school. See *James v. Board of Education*, 461 F.2d 566, 574 (2nd Cir.), cert. denied, 409 U.S. 1042, 93 S.Ct. 529, 34 L.Ed.2d 491 (1972), rehearing denied, 410 U.S. 947, 93 S.Ct. 1355, 35 L.Ed.2d 617 (1973), and *Hostrop v. Board*, 471 F.2d 488, 492 (7th Cir. 1972), cert. denied, 411 U.S. 967, 93 S.Ct. 2150, 36 L.Ed.2d 688 (1973). Logically, this is the only way to proceed; otherwise, the teacher is put in the position of having to prove a negative; i. e., that his speaking out did not cause disruption.

However, in a nonrenewal situation, since the Board is entitled to act without cause, so long as it acts in good faith, see *Hennessy v. Grand Forks School District No. 1*, supra, obviously it cannot be compelled to assume a burden to establish anything except so far as proof of a rational basis for belief would evidence that the Board acted in good faith.

Therefore, this Court finds:

1. This Court has jurisdiction to consider the case.

2. That the Plaintiff has failed to prove that the School Board's election to nonrenew his contract was based on a constitutionally impermissible ground.

3. That Defendants Stanley Community School District No. 2; and Petter Enns, Donald Aune, Virginia Dobrovolny, Esther Rasch and Harold Braaten, individually and as members of the School Board of Stanley Community School District No. 2, are entitled to a judgment of dismissal on the merits.

Let judgment be entered accordingly.