Helen LEE and Paula Barker, Plaintiffs,

v.

CONSOLIDATED SCHOOL DISTRICT NO. 4, GRANDVIEW, MISSOURI, John Neely, Roger Tisch, Guy Bolen, Nicoli Carlton, Catherine Makin, Peter Northcutt, Linda McGuinn, and Joe Wynn, Defendants.

Civ. A. No. 80-0558-CV-W-6.

United States District Court,
W. D. Missouri, W. D.

Aug. 8, 1980.

Thomas D. Cochran and George E. Kapke of Cochran, Kramer, Kapke & Willerth, Independence, Mo., for plaintiffs.

Edward W. Mullen of Deacy & Deacy, Kansas City, Mo., Donald C. Earnshaw, Lee's Summit, Mo., for defendants.

## MEMORANDUM OPINION AND ORDER

SACHS, District Judge.

Plaintiff Helen Lee, formerly a probationary teacher in the sixth grade of a public school in the Grandview, Missouri school district, seeks a preliminary injunction requiring the defendant members of the school board and the superintendent of schools to reinstate her as a teacher for the 1980–1 school year, beginning August 21, 1980.

Lee was notified on April 9 that her annual contract would not be renewed for the forthcoming school year. She has completed more than four full years as a probationary teacher, and would be entitled to tenured status as a "permanent teacher" if she were reemployed after teaching at Grandview for another school year. Sec. 168.104(4), RSMo.

Suit was filed June 13, 1980 by plaintiff Lee and another teacher (who now has a better-paying teaching position in the Wichita, Kansas area) alleging that the failure to renew teaching contracts was retaliatory in nature, based on the school board's opposition to the exercise of First Amendment rights by plaintiffs. Both plaintiffs have served on a teachers' contract negotiating team as members of the Grandview affiliate of the National Education Association. A motion for a preliminary injunction and hearing was filed July 21, 1980. The Court held a full day's hearing on August 2, 1980.

Count I of the complaint is filed essentially under 42 U.S.C. § 1983, and seeks reinstatement and damages for alleged violation of plaintiffs' substantive constitutional rights. Count II seeks similar relief, asserting a violation of procedural due process in the board's denial to plaintiffs of a name-clearing hearing. Count III, not here in issue, alleges sexual harassment by the principal at Lee's school, and alleges that nonrenewal was recommended in retaliation for her rejection of his solicitation.

Plaintiffs testified at the hearing, exhibits were introduced, and the Court advised

that depositions previously taken would be considered in evaluating the motion.[1] All members of the school board testified that they did not consider plaintiffs' union affiliation or activities, but relied entirely on the principals' recommendations. The superintendent testified that there was no anti-union motivation on his part, and that he relied on the principals' recommendations. The principals testified concerning their reasons for recommending nonrenewal of the teaching contracts. Lee's principal objected to her failure to smile and remain cheerful, her handling of a gum-chewing problem, and her poor rapport with him, including a failure to respond to his greetings. Three parents (including one member of the school board, Mrs. Carlton) testified that Lee "yelled more" in class than in previous years, according to their children, and had humiliated two children in connection with their school work, so that they came home in tears. A secretary at the school testified that Lee was rude to the principal and was loud and verbally belligerent on occasion.

An offer of proof was made that 26 of 30 teachers at Lee's school had subsequently filed with the school board a petition against the principal which was still under consideration, and that only one teacher had stated disagreement with the petition. It appears that the petition was at least indirectly supportive of Lee's performance as a classroom teacher. There was evidence of considerable controversy between the school board and the teachers over contract negotiations, that the board had imposed its own terms without teacher approval in 1979, and that picketing and demonstrations had occurred last summer.

Additional items of evidence and the Court's comments on the evidence will be made in the course of discussing the applicable legal principles. This memorandum opinion is filed pursuant to the Court's obligation under Rule 52, Federal Rules of Civil Procedure.

On application for a preliminary injunction, the district court is authorized, and it is the practice of this Court, "to examine summarily the merits of the dispute, the potential for immediate injury to the parties, and the availability of ultimate remedies less drastic than the granting of injunctive relief in the initial stages of litigation." *Rittmiller v. Blex Oil, Inc.*, 624 F.2d 857 (8th Cir. 1980). Various procedural formulas have been stated as guidelines for the district courts, but no final articulation of standards has occurred in the Eighth Circuit. Ibid.

■ The variety of circumstances presented on preliminary injunction may make it impossible to state concise and universally applicable standards. Delicate judgments must be made, based upon a " 'flexible interplay' among all the factors considered." *Blackwelder Furniture Co. v. Seilig Mfg. Co.*, 550 F.2d 189, 196 (4th Cir. 1977). As a general approach, however, it is undoubtedly the rule that a very heavy burden of persuasion rests on a party seeking the "drastic remedy" of a preliminary injunction, especially a mandatory injunction giving assistance to one party during litigation and before the completion of discovery. *Flintkote Co. v. Blumenthal*, 469 F.Supp. 115, 125 (N.D.N.Y.1979); *Clune v. Publishers Association of New York City*, 214 F.Supp. 520, 531 (S.D.N.Y.1963). If summary judgment motions must be approached with caution, requests for preliminary injunctions before the completion of discovery must be viewed with even greater reservations. The Court does not consider the so-called Third Circuit Rule to be an overstatement: " 'To doubt is to deny.' " *Raitport v. General Motors Corp.*, 366 F.Supp. 328, 330 (E.D.Pa.1973).[2]

1. The depositions contain little material testimony not presented at the hearing but do contain "leads" for further development of the case, similar to those noted in footnote 4.

2. The pertinent doubt concerns entitlement to interim relief; significant doubt about the ultimate merits is of course not fatal when the immediate balance of equities strongly favors granting relief. *Fennell v. Butler*, 570 F.2d 263 (8th Cir. 1978).

Although the Court has received an unusual amount of evidence on the merits, there are many factual questions lurking in the background, not yet probed by counsel. We therefore examine first the balance of hardships, or applicable equities, assuming for the moment that plaintiff Lee has at least a colorable claim of a First Amendment violation.

■ Plaintiff's financial need for employment income during the coming year may be presumed, although it was not developed by the testimony. The Court has no basis for inferring that plaintiff is in critical financial straits. She has apparent qualifications for interim employment pending litigation, based upon her experience and the Court's observation of her intelligence and personable qualities. She has generally obtained summer employment in recent years. The loss of her position in the Grandview school district may not weigh heavily against her in seeking employment, under the evidence the Court has heard, and may in fact create sympathy from a prospective employer. In the context of lost public employment, the Court is bound to give considerable weight to the ruling in *Sampson v. Murray*, 415 U.S. 61, 90, 94 S.Ct. 937, 952, 39 L.Ed.2d 166 (1974) that "the temporary loss of income, ultimately to be recovered, does not usually constitute irreparable injury" justifying mandatory reinstatement pending litigation.

It is possible although not very likely that the temporary reinstatement of plaintiff would be disruptive to employee relations in the school system. Plaintiff does not seek to be returned to the particular school in question.

Summary reinstatement would of course strain desirable Federal-State relations; judicial intrusion on executive decisions is also undesirable. Where constitutional violations are clearly shown, however, the courts must override such considerations. See, e. g., *Thompson v. Southwest School District*, 483 F.Supp. 1170 (W.D.Mo.1980).

■ A significant issue is posed by plaintiff's loss of accrued rights toward tenured status. The value of tenure may not be readily assessable in dollars. Reinstatement without loss of tenure rights because of interrupted service may thus be an appropriate ultimate remedy, if plaintiff proves her case. *Gieringer v. Center School District No. 58*, 477 F.2d 1164 (8th Cir. 1973). Loss of interim income should be easily susceptible of proof, however, so it cannot be fairly concluded that irreparable injury would flow from the denial of interim relief. Id., *Sampson v. Murray*, supra. Even if a possibility of irreparable injury could reasonably be asserted at this time, moreover, such a mere possibility would not suffice to authorize a preliminary injunction without a showing of a "strong probability of success on the merits". *Blackwelder Furniture Co.*, supra, 550 F.2d at 196.

■ Turning to the merits, the primary and most substantial allegation of plaintiffs is that the nonrenewal of their contracts was based on impermissible consideration of their First Amendment activities.[3] In assessing plaintiffs' likelihood of

---

**3.** Procedural due process, in the sense of notice and opportunity to be heard, is a separate issue from nonrenewal for impermissible reasons. *Perry v. Sindermann*, 408 U.S. 593, 598–99, 92 S.Ct. 2694, 2698, 33 L.Ed.2d 570 (1972). Lack of tenure or contract is relevant to the due process claim, but not to the First Amendment claim. *Id.; Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); *Hastings v. Bonner*, 578 F.2d 136 (5th Cir. 1978). A nontenured teacher may still have the right to procedural due process protections, however, where a "stigma" from the defendants' actions rises to the level of infringement of liberty. A right to a name-clearing hearing may arise when there is danger of foreclosure of employment opportunities or resulting sig-

nificant damage to standing and associations in the community, usually due to derogatory reasons for nonrenewal which are made a matter of record available to prospective employers or are publicly announced. *Clark v. Mann*, 562 F.2d 1104 (8th Cir. 1977); see generally, *Owen v. City of Independence*, 445 U.S. 622, 633–634 n.13, 100 S.Ct. 1398, 1406–07 n. 13, 63 L.Ed.2d 673 (1980); *Paul v. Davis*, 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976). The only evidence presented which is remotely related to this issue is some reference to a general statement made at a public meeting by one of the board members to the effect that teachers who are doing their jobs do not have to worry about nonrenewal.

success, we note that they would have only the burden of establishing the fact that First Amendment activities were a substantial, or motivating, factor in the decisions not to rehire. The defendants would then have the opportunity of showing, by a preponderance of the evidence, "that [they] would have reached the same decision as to [plaintiffs'] reemployment even in the absence of the protected conduct." *Mt. Healthy City Board of Education v. Doyle,* 429 U.S. 274, 287, 97 S.Ct. 568, 576, 50 L.Ed.2d 471 (1977); see also, *Hastings v. Bonner,* 578 F.2d 136, 141 (5th Cir. 1978).

Considering the testimony, the Court notes a number of suspicious circumstances which support plaintiff Lee's claim, but the weight of the evidence at this point probably favors defendants' contention that any injustice to plaintiff was not of constitutional dimensions. The school board members testified with some credibility and solid unanimity that union affiliation and activities were not considered by them.[4] The superintendent also testified to his reliance on the principal's recommendation. See *Meyr v. Bd. of Ed. of Affton Sch. Dist.,* 572 F.2d 1229, 1233 (8th Cir. 1978).

The testimony of plaintiff's former principal was flawed by apparent emotion and tension. Even if his recommendation was unjustifiable, however, under the current evidence it seems probably related to (1) a personality clash unrelated to Lee's union activities or (2) undue weight given to the problems of one parent, because she was a member of the school board. Review of his notes (not in evidence or previously discovered by plaintiff) may support either a union connection or a connection with Mrs. Carlson's complaint in December, 1979.

The strongest proof supporting defendants was Mrs. Carlson's testimony as parent of a child in plaintiff Lee's classroom; however, she conceded that she had supposed her daughter may have had a temporary personal problem not attributable to the teacher. The testimony of supporting witnesses was notably weak. Even if the weight of subsequent trial testimony confirms a conclusion that Lee was not a suitable sixth grade teacher, however, there is as yet no explanation of why she was not considered for a different age group, where her teaching record was unquestionably good or even outstanding.[5]

 In sum, the Court's impression from the testimony is that plaintiff may be able to develop a convincing case at trial, but she has failed to establish a solid basis for granting a preliminary injunction.

The application for preliminary injunction is therefore DENIED.

---

4. Quite a different case will be presented if there should be trial testimony from witnesses who can verify alleged statements of board members that union activities were a consideration (or even partially a factor) in the nonrenewal of plaintiff's contract. *Gieringer,* supra. Plaintiffs' case may also be materially assisted if board member resistance to continuing a unilateral no-reprisal clause as a condition of negotiations is developed through additional evidence.

Testimony offered by defendants tended to show that one member of the NEA had recently been employed, or was about to be employed pending litigation. In a district employing 350 teachers this could develop into a showing of tokenism and antiunion bias in employment practices. There was also evidence of employer surveillance of contract negotiating reporting by teachers. Evidence of coercive labor relations practices may be relevant to the question of antiunion bias. *Alexander Dawson, Inc. v. NLRB,* 586 F.2d 1300, 1304 (9th Cir. 1978). While Federal labor relations legislation does not apply to local public employment, conduct which is deemed coercive in one context does not lose its character simply because it may not be illegal.

5. While defendants may have authority to act with "no reason at all", because plaintiff is untenured, an apparently arbitrary action may support an inference, from other evidence, that an undisclosed motive was at work.